## UNITED STATES v. SANGES et al.

*(Circuit Court, N. D. Georgia.  October 5, 1891.)*

1. CONSTITUTIONAL LAW—RIGHT TO TESTIFY BEFORE FEDERAL GRAND JURY—CONSPIRACY.

   The amendments to the constitution of the United States, including especially section 1 of the fourteenth amendment, so far as they relate to the rights of individuals, are intended to prevent the states and the United States, or any persons acting under their authority, from interfering with existing rights, and do not confer any new rights; and hence one cannot claim that his right to testify before a federal grand jury without interference from private individuals is one conferred by the constitution of the United States, within the meaning of Rev. St. U. S. §§ 5508, 5509, which prescribe a punishment for any persons who "conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the constitution of the United States, or because of his having so exercised the same." *Ex parte Yarbrough*, 110 U. S. 653, 4 Sup. Ct. Rep. 152; *U. S.* v. *Waddell*, 112 U. S. 76, 5 Sup. Ct. Rep. 35; and *State* v. *Lancaster*, 44 Fed. Rep. 896,—distinguished.

2. SAME—CONSPIRACY—INDICTMENT.

   Rev. St. U. S. § 1977, declaring that "all persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other," will not support an indictment for a conspiracy by private individuals to injure and oppress a citizen for testifying before a federal grand jury, in the absence of allegations that such citizen was a person of color, or that the acts were committed because of his color and previous condition of servitude.

At Law.

At the October term of the United States circuit court for the northern district of Georgia, the grand jury returned an indictment under sections 5508, 5509, Rev. St. U. S., against the above-named defendants, for conspiring to injure and oppress a citizen of the United States in the exercise of civil rights, and for murder of said citizen. The indictment charges—

"That on the 11th day of November, Anno Domini, eighteen hundred and ninety, (11th November, 1890,) one Joseph Wright, near Marietta, in the county of Cobb, in the district aforesaid, was then and there a citizen of the United States, and was then and there returning to his home in Cobb county from Atlanta, having, while in Atlanta, appeared as a witness and testified on said date before the United States grand jury for said northern district of Georgia, then and there legally sitting, and clothed with power to inquire into and true presentment make of all crimes committed in said northern district of Georgia, against the laws of the United States, as to violations of the internal revenue laws of the United States, by one William Teasley and Dennis Alexander, who were respectively and severally charged with carrying on the business of retail liquor dealers within said district, on the 10th of November, 1889, 1st of April, 1890, 1st of July, 1890, and 20th of October, 1890, without having paid the special tax, as required by law; the said Joseph Wright having come from his home in Cobb county to Atlanta, before said United States grand jury, on the 10th and 11th of November, 1890, in response and in obedience to subpœna commanding him to appear as a witness for the United States against said Teasley and Alexander, and against each of them respectively, to-wit, said William Teasley and Dennis Alexander. That thereafter, to-wit, the day first aforesaid, 11th of November, 1890, while the said Joseph Wright was still said witness under said subpœna from the said United States court, one George Sanges, Dennis Alexander, Isaac Smith, and Charles Porter, together with divers other evil-disposed persons, whose names are to the grand jurors aforesaid unknown, did then and there combine, conspire, and confederate, by and between themselves, with force and arms, to injure and oppress him, the said Joseph Wright, in the free exercise and enjoyment of a right and privilege then and there secured to him, the said Joseph Wright, by the constitution and by-laws of the United States. and because he, the said Joseph Wright, was then and there in the free exercise and enjoyment of said right and privilege, to-wit, the right and privilege, as a citizen of the United States, to inform the proper officers of the United States of violations of its internal revenue, and of attempts to defraud the United States, by the said William Teasley and Dennis Alexander, and the right and privilege of a citizen of the United States to aid in preventing such attempts to defraud the United States of its revenues, and to prosecute such cases, and the right, privilege, and duty of said Wright, as a citizen of the United States, to obey the process of the court, and to comply with and answer the subpœnas of said United States court, in obedience thereto to appear and testify as a witness freely, fully, and truthfully, before said United States grand jury in Atlanta, for the northern district of Georgia, to any matter pending therein, criminating, and tending to criminate, said William Teasley, said Alexander, and other persons, for violating the internal revenue laws of the United States, and return to his home in peace and safety after so testifying, and the right and privilege of said Joseph Wright, as a citizen of the United States, to be secure, safe, and unmolested in his person, and exempt from violence, for having exercised and enjoyed the said rights, privileges, and immunities hereinbefore enumerated, secured to him, the said Joseph Wright, as a citizen of the United States, by the constitution and laws of the United States; and they, the said George Sanges, Dennis Alexander, Isaac Smith, and Charles

Porter, together with divers other evil-disposed persons, having so combined, conspired, and confederated, did thereafter, in pursuance of such combination and conspiracy, on, to-wit, the day first aforesaid, in the county of Cobb, and the district aforesaid, to-wit, on the 11th of November, 1890, at night, then and there go on the highway, and then and there assault him, the said Joseph Wright, with deadly weapons, to-wit, with pistols, then and there loaded with gunpowder and leaden bullets, and did then and there discharge the said deadly weapons to, at, and against him, the said Joseph Wright, and did wound and maim him, the said Joseph Wright; and they, the said George Sanges, Dennis Alexander, Isaac Smith, and Charles Porter, in pursuance of said conspiracy, and while then and there in prosecution of said conspiracy, as aforesaid, with force and arms, in and upon the body of said Joseph Wright, then and there, in the peace of the United States, being feloniously, willfully, and of their malice aforethought, and from a deliberate and premeditated design unlawfully to effect the death of the said Joseph Wright, did then and there shoot off and discharge at and against him, the said Joseph Wright, loaded pistols, then and there loaded with gunpowder and leaden bullets, and by shooting off and discharging said loaded pistols, as aforesaid, they, the said George Sanges, Dennis Alexander, Isaac Smith, and Charles Porter, did then and there willfully, and of their malice aforethought, strike and penetrate the body of said Joseph Wright with leaden bullets, and did then and there inflict upon him, the said Joseph Wright, mortal wounds, of which mortal wounds he, the said Joseph Wright, did then and there immediately die.  And so the grand jurors aforesaid do find and present, on their oaths, that the said George Sanges, Dennis Alexander, Isaac Smith, and Charles Porter did then and there feloniously, and of their malice aforethought, kill and murder the said Joseph Wright, then and there a citizen of, and in the peace of, the United States, while they, the said George Sanges, Dennis Alexander, Isaac Smith, and Charles Porter, and their other co-conspirators, to the grand jurors unknown, were then and there prosecuting said conspiracy to injure and oppress the said Joseph Wright, with intent of them, the said conspirators, to prevent and hinder the said Joseph Wright in the free exercise and enjoyment of his said right and privilege as a citizen of the United States, then and there secured to him, the said Joseph Wright, by the constitution and laws of the United States of America, as aforesaid, as such a citizen of the United States, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America.

[Signed]                           "S. A. DARNELL, U. S. Attorney."

The cause having come on for trial, the defendants demurred to this indictment upon five grounds, only two of which were relied on in the argument of counsel.   These are—

"*Fourth.* Because there are no such rights or privileges secured to the party conspired against by the constitution and laws of the United States as those set out in the indictment.

"*Fifth.* Because, on the facts alleged in said indictment, there is no crime or offense set out of which the courts of the United States can take cognizance."

*S. A. Darnell*, U. S. Dist. Atty., and *E. A. Angier*, Asst. U. S. Dist. Atty.

*J. E. Mosley*, *W. C. Glenn*, and *I. Z. Foster*, for defendants.

Before LAMAR, Justice, and NEWMAN, J.

LAMAR, Justice. The two sections of the Revised Statutes under which this indictment is drawn, and which were relied on in the argu-

ment of the attorneys for the United States, viz., 5508 and 5509, are in the following language :

"Sec. 5508. If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the constitution or laws of the United States, or because of his having so exercised the same, or if two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured, they shall be fined not more than five thousand dollars, and imprisoned not more than ten years, and shall, moreover, thereafter be ineligible to any office or place of honor, profit, or trust created by the constitution or laws of the United States.

"Sec. 5509. If in the act of violating any provision in any of the two preceding sections any other felony or misdemeanor be committed, the offender shall be punished for the same with such punishment as is attached to such felony or misdemeanor by the laws of the state in which the offense is committed."

The questions presented by this demurrer are: Does an indictment which charges the defendant with conspiring to oppress and injure a citizen of the United States in the exercise of his right to appear and testify as a witness before the grand jury of a federal court, and also with having, in pursuance of such conspiracy, murdered him, because of his having exercised that right, describe an offense within the sections referred to? Is the right to appear as a witness and to testify before a grand jury of a federal court a right secured by the constitution and laws of the United States, in the sense in which that language is employed in those sections? These questions are not altogether free from difficulty, in view of other sections which have an important bearing on the case, in view of the acts of congress from which they are taken, and especially in view of the numerous decisions of the supreme court of the United States in which that court has had occasion to express its views upon the amendments to the constitution of the United States for the enforcement of which those statutes were avowedly passed. The two sections of the Revised Statutes under which this indictment is conceded to be drawn are taken from the acts of congress approved 31st May, 1870, (16 St. 141,) known as the "Enforcement Act," entitled "An act to enforce the rights of citizens of the United States to vote in the several states of this Union, and for other purposes." The sixth and seventh sections of the act are substantially incorporated into the text of sections 5508, 5509, Rev. St. All the preceding sections of the act relate directly and exclusively to the protection of colored citizens in the exercise of the right of suffrage in the several states. Its fifth section makes it a penal offense for any person to prevent, hinder, or intimidate any person from exercising the right of suffrage, to whom it is secured by the fifteenth amendment, by means of bribery, threats, or threats of depriving of occupation, or of ejecting from land or tenements, or of refusing to renew a lease, or of violence to such person or his family. There is nothing in this fifth section which aims at a conspiracy. The sixth section does refer, in positive terms, to a conspiracy, and it is insisted by counsel for

the prosecution that its language, retained in the Revised Statutes, refers to such a conspiracy as is set forth in this indictment, and that the federal courts have jurisdiction over the offense as charged. The attorney general of the United States clearly does not concur in this construction. In his late annual report he uses the following language:

"It is certainly an anomaly in government that those who have committed murders for the purpose of stopping prosecution in the federal courts should not only not be punished, but not even be put upon trial, although, in at least two cases in one district during 1890, well known. Yet such is the fact. It is needless to say *that the federal courts have no adequate jurisdiction of these offenses.* [Italics ours.] Section 5509 of the Revised Statutes provides that, if any person attempts, by intimidation, threats, etc., to prevent any citizen from exercising the right of suffrage, and in so doing commits a felony, or if two or more persons conspire to debar any person from the enjoyment of any of his civil rights, and in so doing commit a felony, such felony shall be punished according to the laws of the state wherein the same is committed. If section 5509 were so broadened as to make any felony committed while in the act of violating any statute of the United States triable in the United States courts, and punishable according to the laws of the state wherein the same is committed, it would greatly help in the administration of justice. So long as persons who kill officers, witnesses, or jurors for the purpose of impeding the administration of justice can only be tried and punished in a federal court as for a minor offense, the administration of the United States laws, and the laws themselves, in many districts, will have little respect."

See Annual Report of the Attorney General of the United States for the year 1890, (Dec. 1, 1890,) pp. xiii., xiv.

This construction of the attorney general derives some support from the fact that the enforcement act of 1870 itself was primarily passed to secure and enforce the equal right of suffrage to all citizens, irrespective of race, color, or previous condition of servitude. 1 Woods, 320. In the case of *Baldwin* v. *Franks*, 120 U. S. 678, 691, 7 Sup. Ct. Rep. 656, 763, the supreme court of the United States, in its opinion, delivered by Mr. Chief Justice WAITE, referring to section 5508, and the statute from which it was taken, used the following language:

"That statute was the act of May 31, 1870, c. 114, (16 St. 140,) 'to enforce the right of citizens of the United States to vote in the several states of this Union, and for other purposes.' It is the statute which was under consideration as to some of its sections in *U. S.* v. *Reese,* 92 U. S. 214, and from its title, as well as its text, it is apparent that the great purpose of congress in its enactment was to enforce the political rights of citizens of the United States in the several states. Under these circumstances, there cannot be a doubt that originally the word 'citizen' was used in its political sense, and, as the Revised Statutes are but a revision and consolidation of the statutes in force December 1, 1873, the presumption is that the word has the same meaning there that it had originally. This particular section is a substantial reenactment of section 6 of the original act, which is found among the sections that deal exclusively with the political rights of citizens, especially their right to vote, and were evidently intended to prevent discriminations in this particular against voters on account of 'race, color, or previous condition of servitude.'"

But, if it be assumed that this section was intended to have a wider scope than protection to the right to vote, and to extend to any right

secured by the constitution and laws of the United States, the construction of the attorney general is still corroborated by the further fact that, after it was passed, congress enacted another law, which, in express terms, described the specific offense of conspiring to intimidate and deter a witness from attending and testifying in a federal court, and also prescribing a punishment entirely different from that prescribed in sections 5508 and 5509.

The act referred to was passed April 20, 1871, (17 St. 13,) entitled "An act to enforce 14th amendment to the constitution of the United States, and for other purposes." Its second section is contained in section 5406 of the Revised Statutes, which is as follows:

"If two or more persons in any state or territory conspire to deter by force, intimidation, or threat any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit jury, or any such jury, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror, each of such persons shall be punished by a fine of no less than $500 nor more than $5,000, or imprisonment, with or without hard labor, not less than six months nor more than six years, or by both such fine and imprisonment." Act April 20, 1871, (17 St. c. 22, §§ 2, 13.)

This section is in chapter 4 of the Revised Statutes, under the head of "Crimes against Justice;" and it is very properly there, for it manifestly relates to those crimes and misdemeanors which affect the government, its public polity, and the administration of its laws in its courts of justice, as distinguished from those offenses which are pointed against the civil rights of private persons. The congress of the United States clearly possesses the constitutional power, and is charged with the constitutional duty, to protect all the agencies of the federal government, including the courts, their officers, and all persons whose attendance is necessary in the proceedings of those courts, such as parties, witnesses, and jurors. That power and duty of protection have been exercised and performed with regard to parties, witnesses, and jurors in section 5406, above quoted.

We are informed by the brief of the assistant United States attorney that there is pending in the court a separate indictment, under section 5406, against these defendants, charging them with the offense made penal by that section. Hence, the particular effect of our decision upon the demurrer to this indictment now before us will be the determination of the question whether, in the event of conviction of these defendants of the crime of having conspired to deter by force the witness Wright from attending the United States court, or from testifying therein, or of having injured him in his person on account of having so testified, their punishment shall be that prescribed in section 5406, or that prescribed in sections 5508 and 5509. The right or duty of the government to provide for the protection given by section 5406 to parties, jurors, and

witnesses arises, not so much from the interest or right of those persons, as from the necessity of the government itself that the great agencies of its judicial organism should not be impeded in their official administration of the laws, and that all its instrumentalities should be protected against the obstructions of force or fraud. The *status* of a witness in a court, pending either a civil or criminal proceeding, is in law regarded as one of obligation and duty, which he is compelled to perform, or of a function which he is obliged to discharge, rather than a right on his part which he may or may not exercise, according to his own will. The right, in relation to his testimony, is the right of the parties litigant, or of the government, as the case may be, to have it taken; not his own, either to offer or withhold. They are entitled to the process of the court to compel his attendance, and, when he attends, to compel him to testify, even against his will, to the whole truth, and nothing but the truth.

With respect to the prosecution for a crime pending in a federal court, or in a United States grand jury, the right which this particular section designs to protect is a public right, *i. e.*, the right of the United States to have its witnesses and their testimony, and to have them protected in going to and returning from the court. The wrong punished in such cases is a public wrong, and its correlative is a public right. Section 5508 presupposes that the "right or privilege" involved has already been secured by the constitution and laws of the United States, and therefore it is necessary to turn to them for the definition of the right in this indictment charged to be violated, in order to determine whether the indictment is authorized by the provisions of that section. Fortunately we are not without judicial construction of these provisions and of other statutes relating to cognate subjects, as well as judicial expositions of the constitutional amendments which it is contended contained the authority for their enactment. *Slaughter-House Cases,* 16 Wall. 36; *U. S.* v. *Cruikshank,* 1 Woods, 308, 92 U. S. 542; *U. S.* v. *Reese,* Id. 214; *U. S.* v. *Harris,* 106 U. S. 629, 1 Sup. Ct. Rep. 601; *Strauder* v *West Virginia,* 100 U. S. 303; *Ex parte Virginia,* 100 U. S. 339; *Bradwell* v. *State,* 16 Wall. 130; *Hurtado* v. *California,* 110 U. S. 516, 4 Sup. Ct. Rep. 111, 292; *Civil Rights Cases,* 109 U. S. 3, 3 Sup. Ct. Rep. 18; *Ex parte Yarbrough,* 110 U. S. 651, 4 Sup. Ct. Rep. 152; *U. S.* v. *Waddell,* 112 U. S. 76, 5 Sup. Ct. Rep. 35. The case of *U. S.* v. *Cruikshank, supra,* arose from an indictment containing numerous counts drawn under the sixth and seventh sections of the enforcement act of May 31, 1870, charging the defendants with conspiring together to hinder and prevent certain citizens of the United States in the exercise of various civil rights therein described. The sections in the enforcement act on which the indictment in the *Cruikshank Case* was founded are, as we have stated, the same in substance as those on which the indictment in this case was founded. All the counts in the former indictment were held by Judge BRADLEY in the court below, (1 Woods, 308,) and by the supreme court, (92 U. S. 548,) to be not sufficient to sustain a conviction because the sixth and seventh sections of the enforcement act were unauthorized by the constitution. As the

constitutional amendments relied upon in the support of those sections are clearly illustrated, and the limits within which they may be enforced by congress are distinctly defined, in the able opinion of the court in that case, delivered by Chief Justice WAITE, we deem it proper to quote more freely from it than usual. The chief ground of the decision is that the clauses in the constitutional amendments relied on to sustain the validity of the enforcement act were guaranties of rights against the action of the government only, federal or state, and not against individuals; and that, therefore, they do not afford constitutional ground for penal legislation against individuals.

The rights specified in that indictment which the defendants were accused of conspiring to hinder and interfere with were—*First*, the right of peaceably assembling together for a peaceful and lawful purpose; *second*, the right of bearing arms for a lawful purpose; *third*, the right to be protected against the deprivation of life, and liberty of person, without due process of law; *fourth*, the right of equal protection of the laws of the state and of the United States; *fifth*, the right of voting as a citizen of the United States, irrespective of race, color, or previous condition of servitude. The court held that none of these rights are granted by the constitution, nor dependent upon it for their existence, but are only guarantied against state or federal infringement.

Speaking of the first-mentioned right, to-wit, the right to assemble together for a peaceable purpose, it says:

"The first amendment to the constitution prohibits congress from abridging 'the right of the people to assemble, and to petition the government for a redress of grievances.' * * * The particular amendment now under consideration assumes the existence of a right for the people to assemble for lawful purposes, and protects it against encroachment by congress. The right was not created by the amendment; neither was its continuance guarantied, except as against congressional interference. For their protection in its enjoyment, therefore, the people must look to the states. The power for that purpose was originally placed there, and it has never been surrendered to the United States." 92 U. S. 552.

With regard to the second right specified in the indictment, namely, the right to bear arms for a lawful purpose, it says:

"The second amendment declares that it shall not be infringed; but this, as has been seen, means no more than it shall not be infringed by congress. This is one of the amendments that has no other effect than to restrict the powers of the national government, leaving the people to look for their protection, against any violation by their fellow-citizens of the rights it recognized, to what is called, in *City of New York* v. *Miln,* 11 Pet. 139, 'the powers which relate to merely municipal legislation, or what was, perhaps, more properly called internal police,' 'not surrendered or restrained' by the constitution of the United States." 92 U. S. 553.

Referring to the charge in that indictment, that the defendants conspired to deprive the citizens named therein of their several lives and liberty without due process of law, the court says:

"The 14th amendment prohibits a state from depriving any person of life, liberty, or property without due process of law; but this adds nothing to the rights of one citizen as against another. It simply furnishes an

additional guaranty against any encroachment by the states upon the funda-mental rights which belong to every citizen as a member of society." 92 U. S. 554.

In the same connection, the court said:

"This is nothing else than alleging a conspiracy to falsely imprison or murder citizens of the United States, being within the territorial jurisdiction of the state of Louisiana. The rights of life and personal liberty are natural rights of man. 'To secure these rights,' says the Declaration of Independence, 'governments are instituted among men, deriving their just powers from the consent of the governed.' The very highest duty of the states when they entered into the Union under the constitution was to protect all persons within their boundaries in the enjoyment of these 'unalienable rights with which they were endowed by their Creator.' Sovereignty for this purpose rests alone with the states. It is no more the duty or within the power of the United States to punish for a conspiracy to falsely imprison or murder within a state than it would be to punish for false imprisonment or murder itself. * * * These counts in the indictment do not call for the exercise of any of the powers conferred by this provision in the amendment." Id. 553, 554.

With regard to the fourth right mentioned in that indictment which the defendants were charged with conspiring to violate, viz., the right of enjoying the equal protection of the laws of the state of Louisiana and of the United States, the court says:

"The fourteenth amendment prohibits a state from denying to any person within its jurisdiction the equal protection of the laws; but this provision does not, any more than the one which precedes it, and which we have just considered, add anything to the rights which one citizen has under the constitution against another. The equality of the rights of citizens is a principle of republicanism. Every republican government is in duty bound to protect all its citizens in the enjoyment of this principle, if within its power. That duty was originally assumed by the states, and it still remains there. The only obligation resting upon the United States is to see that the states do not deny the right. This the amendment guarantees, but no more. The power of the national government is limited to the enforcement of this guaranty." Id. 554, 555.

It is hardly necessary to go over the other cases which in another place in this opinion we have cited, for convenience of reference. In the decisions of the supreme court upon them it has been found necessary to pass upon the construction of these and many other sections of the Revised Statutes in their application to the varying facts presented by each case; but they all show the steady adherence of that court to the fundamental principles enunciated by Mr. Justice BRADLEY in the case of *U. S. v. Cruikshank*, 1 Woods, 308, and reiterated by the supreme court of the United States in the same case on a writ of error. They all agree that, aside from the extinction of slavery and the declaration of national citizenship, the constitutional amendments are restrictive upon the power of the general government and the action of the states, and there is nothing in their language or spirit which indicates that they are to be enforced by congressional enactments, authorizing the trial, conviction, and punishment of individuals for individual invasions of individual rights, unless committed under state authority; that the 'four-

teenth amendment guarantied immunity from state laws and state acts invading the privileges and rights specified in the amendment, but conferred no rights upon one citizen as against another; that the provision of the fourteenth amendment, authorizing congress to enforce its guaranties by legislation, means such legislation as is necessary to control and counteract state abridgment; and that the protection and enforcement of the rights of citizens of the United States provided in the enforcement act of 1870 and the civil rights act of 1875 apply only to such rights as are granted by and dependent on the constitution and valid and constitutional laws of the United States.

In the light of these principles, as laid down by the supreme court of the United States, we are not prepared to say that the right of any person to be a witness, and to attend court for the purpose of giving his testimony, is a right granted by the constitution. The constitution has no provision in relation to witnesses and their testimony in court, except that in article 5, declaring that no person shall be compelled in a criminal case to be a witness against himself, and the one in article 6, which declares that in criminal prosecutions the accused shall enjoy the right to be confronted with the witnesses against him, and to have compulsory process for obtaining witnesses in his favor. The giving and receiving of evidence as an essential and vital principle in the proceedings of all courts had been firmly established in English and American law long anterior to the adoption of the constitution. It did not originate in the constitution, and is not in any manner dependent for its existence upon that instrument. Is there any law of congress outside of sections 5508 and 5509 which secures the right in question? We have already shown that it is not secured as a private right by section 5406, either in express terms or by implication.

We are not unmindful of the fact that the sixteenth section of the enforcement act of 1870 mentions the giving of evidence as a right. That law, as we find it incorporated into the Revised Statutes of the United States, (section 1977,) declares that—

"All persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

Manifestly the right to give evidence, which it is the intention of this section to secure, is not the right alleged to have been violated in the indictment under consideration. It unquestionably secures to persons of color the same right to give evidence as is enjoyed by white citizens. Its express purpose, as in section 858, is to take care of the colored witnesses in the United States courts, to remove all discrimination against them as witnesses, and to make the laws of the state the gauge of the competency of all witnesses. But there is another view which demonstrates that this section does not sustain the indictment in this case. We cannot present it more forcibly than by quoting the following from the opinion

of the supreme court, delivered by Mr. Justice BRADLEY, in the *Civil Rights Cases, supra.* Referring to the provisions as above quoted, and other subsequent provisions in the statute from which the section was taken, the learned justice says:

"This law is clearly corrective in its character, intended to counteract and furnish redress against state laws and proceedings, and customs having the force of law, which sanction the wrongful acts specified. In the Revised Statutes, it is true, a very important clause, to-wit, the words ' any law, statute, ordinance, regulation, or custom to the contrary notwithstanding,' which gave the declaratory section its point and effect, are omitted; but the penal part, by which the declaration is enforced, and which is really the effective part of the law, retains the reference to state laws, by making the penalty apply only to those who should subject parties to a deprivation of their rights under color of any statute, ordinance, custom, etc., of any state or territory, thus preserving the corrective character of the legislation. Rev. St. §§ 1977–1979, 5510. * * * In this connection it is proper to state that civil rights, such as are guarantied by the constitution against state aggression, cannot be impaired by the wrongful acts of individuals, unsupported by state authority, in the shape of laws, customs, or judicial or executive proceedings. The wrongful act of an individual, unsupported by any such authority, is simply a private wrong, or a crime of that individual; an invasion of the rights of the injured party, it is true, whether they affect his person, his property, or his reputation; but, if not·sanctioned in some way by the state, or not done under state authority, his rights remain in full force, and may presumably be vindicated by resort to the laws of the state for redress. An individual cannot deprive a man of his right to vote, to hold property, to buy and sell, to sue in the courts, or to be a witness or a juror. He may, by force or fraud, interfere with the enjoyment of the right in a particular case; he may commit an assault against the person, or commit murder, or use ruffian violence at the polls, or slander the good name of a fellow-citizen; but, unless protected in these wrongful acts by some shield of state law or state authority, he cannot destroy or injure the right; he will only render himself amenable to satisfaction or punishment; and amenable therefor to the laws of the state where the wrongful acts are committed. Hence, in all those cases where the constitution seeks to protect the rights of a citizen against discriminative and unjust laws of the state by prohibiting such laws, it is not individual offenses, but abrogation and denial of rights, which it denounces, and for which it clothes the congress with power to provide a remedy. * * * And the remedy to be provided must necessarily be predicated upon that wrong. It must assume that in the cases provided for, the evil or wrong actually committed rests upon some state law or state authority for its excuse and perpetration." 109 U. S. 16–18, 3 Sup. Ct. Rep. 25, 26.

Our attention has been called to two cases (*Ex parte Yarbrough*, 110 U. S. 651, 4 Sup. Ct. Rep. 152, and *U. S.* v. *Waddell*, 112 U. S. 76, 5 Sup. Ct. Rep. 35) as authorities in support of the theory of this indictment. The former of these two cases originated in an indictment in the circuit court of the United States for the northern district of Georgia. The indictment, founded on sections 5508, 5520, Rev. St., was for a conspiracy to intimidate a citizen of African descent in the exercise of his right to vote for a member of congress, in execution of which they bruised and maltreated him, and that they did this on account of his race, color, and previous condition of servitude. The court held that, inasmuch as the qualification for the exercise of the right of suffrage

in the choice of the members of the house of representatives is defined by the constitution, which expressly confers upon the congress the power to prescribe the time, place, and manner of holding the election, it may make such regulations as are necessary to guard it from fraud and violence, and punish the persons by whom they are disregarded. The principle which pervades this case is not in any way inconsistent with those laid down in the case of *U. S.* v. *Cruikshank*, and the *Civil Rights Cases*. In these last-named cases the court decided that the rights named in the indictment, and alleged to be violated, were not created or conferred by the constitutional amendment, and that, therefore, section 5508, or rather the corresponding section of the statute of 1870, so far as it relates to those rights, was not constitutional. In *Ex parte Yarbrough* the court held that the right therein named and alleged to have been violated was created and conferred by the constitution in the body of the instrument itself, namely, the fourth section of the first article of the constitution of the United States, and also by the laws of congress passed in pursuance of the express power which that article conferred upon it. And the court, through Mr. Justice MILLER, says, speaking of the power to protect the parties assaulted: "The power in either case arises out of the circumstance that the function in which the party is engaged, or the right which he is about to exercise, is dependent on the laws of the United States. In reply to the objection that the right to vote for a member of congress is not dependent upon the constitution and laws, but upon those of the state, it says: "It is not correct to say that the right to vote for a member of congress does not depend on the constitution of the United States." Again: "It is not true, therefore, that electors for members of congress owe their right to vote to the state law in any sense which makes the exercise of the right to depend exclusively on the law of the state." 110 U. S. 663, 664, 4 Sup. Ct. Rep. 158. This is still more clearly shown in the case of *U. S.* v. *Waddell, supra*. In this case an information had been filed against Waddell and others, charging them, under these sections, with having conspired together to deprive a citizen of the right to establish a homestead upon the public lands under the homestead laws. The court held that this was a case in which the right, against the exercise and enjoyment of which injury and oppression were charged, was created by, and grew directly out of, the constitutional legislation of congress. In delivering the opinion of the court, Mr. Justice MILLER said:

"The protection of this section extends to no other right, to no right or privilege, dependent on a law or laws of the state. Its object is to guarantee safety and protection to persons in the exercise of rights dependent on the laws of the United States, including, of course, the constitution and treaties, as well as statutes, and it does not, *in this section at least, design to protect any other rights.* [Italics ours.] The right assailed, obstructed, and its exercise prevented, or intended to be prevented, as set out in this petition, is very clearly a right wholly dependent upon the act of congress concerning the settlement and sale of the public lands of the United States. No such right exists, or can exist, outside of an act of congress. The constitution of the United States, by article 4, § 3, in express terms vests in congress 'the power to dispose of,

and make all needful rules and regulations respecting, the territory or other property of the United States.' One of its regulations, the one under consideration, authorizes a class of persons, of whom Lindsey is one, to settle upon its' land, and, on payment of any inconsiderable sum of money, and the declaration of intent to make it a homestead, he is authorized to reside there." 112 U. S. 79, 5 Sup. Ct. Rep. 36.

Again:

"The right here guaranteed is not the mere right of protection against personal violence. * * * It is the right to remain on the land in order to perform the requirements of the act of congress, and, according to its rules, perfect his incipient title. Whenever the acts complained of are of a character to prevent this, or throw obstruction in the way of exercising this right, and for the purpose and with the intent to prevent it, or to injure or oppress a person because he has exercised it, then, because it is a right asserted under the law of the United States, and granted by that law, those acts come within the purview of the statute and of the constitutional power of congress to make such statute." Id. 80.

And one of the quotations from *Ex parte Yarbrough*, which we have given above, follows. These cases differ very materially from the case under consideration. There the rights were undeniably dependent upon the constitution of the United States, or the laws in pursuance thereof, and the rights in question there were such as fell clearly within the generally accepted view presented in previous decisions. They were such rights as might be enforced in a court of justice, and the denial of which by any one would subject the offender to a liability to an action for civil damages or to criminal prosecution in the court. Here none of these elements are found, as we think we have shown.

We have also been referred to the case of *U. S.* v. *Lancaster*, 44 Fed. Rep. 896, decided in the circuit court for the southern district of Georgia by Judge SPEER, as a case in all essential features similar to this one; and it is argued that on the authority of that case the demurrer herein should be overruled. We have examined the opinion of the learned judge in that case, and we have no hesitancy in saying that that case is not at all similar to this. That was a case in which there was an indictment for conspiracy, under sections 5508 and 5509, for injuring and oppressing a citizen of the United States in the exercise of his right to sue in the federal court, and it was also alleged in the indictment that in the execution and furtherance of such conspiracy the defendant murdered said citizen. The right in that case was so clearly one dependent upon and growing out of the constitution and laws of congress respecting the jurisdiction of United States courts that a bare mention of the fact is sufficient to show its entire dissimilarity to the right which this indictment charges to have been infringed.

The indictment in this case does not charge the defendants with a conspiracy to deprive a citizen of the United States, being a person of color, and because of his color and previous condition of servitude, of the right to be a witness and testify in a federal court, and with murdering him for having exercised the same; it does not allege that the state of Georgia, where the offense is charged to have been committed, has

made or enforced any law abridging the right of any citizen or citizens to be such witnesses or to give such evidence; it does not allege that the state has in any of its departments, or by any of its officers, or by any of its agents acting under its authority, denied to any person the right to give evidence in any court; it does not allege that the state has failed to recognize and protect the rights of all citizens of the United States, irrespective of race, color, or previous condition of servitude, to attend the courts when summoned, and to testify fully and freely therein; but it is an indictment which alleges that the defendants committed the crime of murder upon the person therein named, within the territorial limits of the state of Georgia.

It is the opinion of this court—*First*, that, irrespective of any question of the constitutional validity of sections 5508 and 5509, the indictment describes no offense within their purview; *secondly*, that any construction which brings the acts set forth in the indictment within the intent and meaning of these sections would render them, so far as they relate to witnesses and testimony, inconsistent with the constitution of the United States. It is our duty to adopt that construction which, without doing violence to the obvious import of the words, brings the enactment into harmony with the supreme law; and where the general words in a statute are equally susceptible of two constructions, one of which makes it accordant with the constitution, and the other renders it beyond the authority it confers, that construction should be adopted which brings the statute into harmony with the constitution. *Grenada Co. v. Brogden*, 112 U. S. 261, 269, 5 Sup. Ct. Rep. 125.

We have given the questions involved in this case the attention which their importance demands, and, after a patient examination of the arguments advanced and the authorities cited by counsel on both sides, we have come to the conclusion that the indictment is not in law good and sufficient. It is ordered that the demurrer be sustained.