## GRENADA COUNTY SUPERVISORS & Others *v.* BROGDEN & Others.

IN ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF MISSISSIPPI.

Submitted October 22, 1884.—Decided November 17, 1884.

That construction of a statute should be adopted which, without doing violence to the fair meaning of the words used, brings it into harmony with the Constitution.

A municipal subscription to the stock of a railroad company, or in aid of the construction of a railroad, made without authority previously conferred, may be confirmed and legalized by subsequent legislative enactment, when legislation of that character is not prohibited by the Constitution, and when that which was done would have been legal had it been done under legislative sanction previously given.

Suit upon county bonds. Judgment for plaintiff. Writ of error to reverse it. The facts are stated in the opinion.

*Mr. H. P. Branham* for plaintiff in error.

*Mr. Reuben O. Reynolds* for defendant in error.

Mr. JUSTICE HARLAN delivered the opinion of the court.

This action was brought to recover the amount of certain bonds and interest coupons issued under date of May 1, 1872, in the name of Grenada County, Mississippi, by its board of supervisors, and made payable to the Vicksburg & Nashville Railroad Company, or bearer, at its agency in the city of New York. Each bond, signed by the president of the board and countersigned by its clerk, with his official seal affixed, recites that it is one of a series issued and delivered to the Vicksburg & Nashville Railroad Company, by Grenada County, to meet and pay off the amount subscribed by the county to the capital stock of the railroad company aforesaid, "in pursuance of an act of the legislature of the State of Mississippi, entitled 'An Act to aid in the construction of the Grenada, Houston & Eastern Railroad,' now Vicksburg & Nashville Railroad, approved February 10, 1860, and of an act amendatory thereof passed March 25, 1871, and in obedience to a vote of the people of said county at an election held in accordance with the provisions of said acts."

The county disputes its liability on the bonds or coupons, although the plaintiffs, who are defendants in error, became holders for value, without notice of any defence except such as the law implies. The defence rests mainly on the ground that the subscription was made and the bonds issued without previous legislative authority conferred in conformity with the Constitution of Mississippi.

The history of the issue of these securities, as disclosed by legislative enactments, the proceedings of the board of supervisors of Grenada County, and the bill of exceptions, is substantially as will be now stated.

The Grenada, Houston & Eastern Railroad Company was incorporated by an act approved February 6, 1860, with power to construct a railroad from Grenada, in Yallobusha County, to Houston, in the county of Chickasaw, thence eastwardly to the

Alabama line, and with authority to connect or consolidate with any other company upon such terms as might be mutually agreed upon, not inconsistent with the laws of the State. Laws Miss. 1869–'60, pp. 394, 402. By the act approved February 10, 1860, the boards of police of Yallobusha, Calhoun, Chickasaw and Monroe counties were authorized for their respective counties to subscribe, upon such terms as they saw proper, to the capital stock of the company, in an amount, not exceeding $200,000 for any one county, to be paid by taxation; provided, a majority of the qualified electors voting at an election held for that purpose upon due notice should first assent thereto; in which event, it was made the duty of the board to make the subscription. Ib., 412.

On the 1st day of December, 1869, a new Constitution for Mississippi went into operation, article 12, section 14 of which declares that "the legislature shall not authorize any county, city or town to become a stockholder in, or lend its credit to, any company, association or corporation, unless two-thirds of the qualified voters of such county, city or town, at a special election, or regular election, to be held therein, shall assent thereto."

On the 9th of May, 1870, the county of Grenada was created out of parts of Yallobusha, Tallahatchie, Carroll and Choctaw counties. Laws Miss. 1870, p. 124.

By an act approved March 25, 1871, amending the preceding statutes, it was declared, among other things, that the act of February 10, 1860, should apply in all its provisions to Grenada County and its officers, and it was made the duty of the board of supervisors of that and other counties along the line of the Grenada, Houston & Eastern Railroad, upon the petition of twenty-five or more citizens, to cause an election to be held in their respective counties to take the sense of the legal voters, whether a sum not exceeding $200,000 to each county, shall be subscribed to the capital stock of said railroad company, to be paid by taxation; also, that whenever, in the act of February 10, 1860, any duty is required of, or authorized to be performed by, the boards of police, or the president thereof, of any of the counties therein named, the same should apply to the board of supervisors of the different counties and to the president

thereof; further, that "all such elections when held shall be conducted in all things as required in the act of which this is amendatory, and of the Constitution and laws of this State in force at the time so held." § 1.

The fourth section authorizes the board of supervisors of any county voting the tax, to issue bonds, maturing at such times, not beyond ten years, and for such sums, as the board deemed necessary, to pay off the subscriptions of said counties, respectively, for capital stock in the Grenada, Houston & Eastern Railroad—the bonds to be signed by the president of the board of supervisors issuing the same, and made payable to the company and their successors and assigns. The sixth section provides that bonds may be issued with interest coupons attached, and, when issued, paid over and delivered to the railroad company in satisfaction of the subscription to the extent of the principal of the bonds; the board taking from the company certificates of stock for the shares paid for, and the stock to be deemed the property of the municipality paying for it.

Under an order made by the board of supervisors of Grenada, in conformity with the petition of more than twenty-five of its citizens, the question was submitted to the qualified voters, at a general election held November 7, 1871, whether the board, by its president, should subscribe, in behalf of that county, $50,000 to the capital stock of the Grenada, Houston & Eastern Railroad Company, and a like sum to the capital stock of the "Vicksburg & Grenada Railroad Company"—each subscription to be met and paid off in eight annual instalments, with eight per cent. interest upon the amount due January 1, 1873, or from the date of the county bonds, if any should be issued, payable annually by taxation upon the property of the tax-payers. The board, at its December term, 1871, caused it to be entered upon its records that the election had been duly advertised and regularly held according to law; that "a constitutional majority of two-thirds of the legal and registered voters of said county were cast" for each subscription, and that the board, by its president, "subscribe for $50,000 each of the capital stock of the Grenada, Houston & Eastern Railroad Company and of the Vicksburg & Grenada Railroad Company,

for and on behalf of Grenada County, to be met and paid by taxation as aforesaid," &c.

When the election was held there was no such corporation as the Vicksburg & Grenada Railroad Company; but the bill of exceptions—setting out what the parties agree are the facts established by the evidence—states, that "for a long time previous to said vote a scheme had been agitated in said county for such a railroad, with its termini at Vicksburg and Grenada, as well as for the construction of the Grenada, Houston & Eastern Railroad; . . . and on the 3d day of January, 1872, the projectors and managers of the railroad, so designated and intended in said vote, were incorporated by an act of the legislature, entitled 'An Act to incorporate the Vicksburg, Yazoo Valley & Grenada Railroad Company.'"

By an act approved January 27, 1872, the Grenada, Houston & Eastern Railroad Company was authorized to extend their road from Grenada via Yazoo City to Vicksburg, thus enabling it to cover the route proposed to be occupied by the so-called Vicksburg & Grenada Railroad, or the Vicksburg, Yazoo Valley & Grenada Railroad. By the same act the name of the Grenada, Houston & Eastern Railroad Company was changed to that of the Vicksburg & Nashville Railroad Company, giving the company all the rights by the latter name which it had under its old name.

Its 4th section is as follows:

"SEC. 4. *Be it further enacted,* That inasmuch as the question of subscription or no subscription for fifty thousand dollars to aid in the construction of a railroad from Vicksburg to Grenada, in this State, was, by the board of supervisors of Grenada County, submitted to the qualified voters of Grenada County, and the same was sustained by a majority of two-thirds of the qualified voters of said county at a general election held therein on the 7th day of November, 1871, it shall and may be lawful for the board of directors of the Vicksburg & Nashville Railroad Company, by resolution made and entered in the minutes of said board at a regular meeting thereof, sanctioned by a majority of said board of directors, to accept all the provisions of this act, and adopt, as a part and portion

of the Vicksburg & Nashville Railroad the extension specified in this act from Grenada to Vicksburg; and when, after such acceptance and adoption, the said so-called Vicksburg & Grenada Railroad shall form and constitute a part and portion of the Vicksburg & Nashville Railroad, and shall be constructed, owned, and held by the Vicksburg & Nashville Railroad Company; and it shall be lawful for, and it is hereby made the duty of the board of supervisors of Grenada County, through the president of said board, upon the application of the president or other authorized agent of the Vicksburg & Nashville Railroad Company, to subscribe for fifty thousand dollars of the capital stock of the Vicksburg & Nashville Railroad Company, based upon the submission to and the approval of the vote of two-thirds of the qualified voters of said county, which is hereby ratified and confirmed to the Vicksburg & Nashville Railroad Company so heretofore had on behalf of the Vicksburg & Grenada Railroad as aforesaid, and bonds of said county to secure the payment of said subscription for the stock and interest thereon, and also certificates of stock in said company shall be used as in other cases provided for in this act."

On the 5th of March, 1872, the Vicksburg, Yazoo Valley & Grenada Railroad Company was consolidated with the Vicksburg & Nashville Railroad Company, the articles of consolidation binding the consolidated company—which retained the name of the Vicksburg & Nashville Railroad Company—among other things, to construct the contemplated road from Vicksburg to Grenada.

Subsequently, in the year 1872, the board of supervisors, by its president, executed and delivered to the Vicksburg and Nashville Railroad Company bonds of the county (those in suit being a part of them), in payment of the subscriptions which had been voted at the election in November, 1871, the county receiving certificates of stock therefor. In 1872 and 1873 the county assessed and collected taxes to pay the coupons maturing at these respective periods on all the bonds in suit. The coupons for those years have been fully paid. The county by its duly accredited agent, was represented at all the

stockholders' meetings of the company, and voted a stock subscription of $100,000. There has been no meeting of stockholders since 1874, nor of the directors since July 6, 1875. About five miles of the Vicksburg & Nashville Railroad westward from Okolona was graded and ironed. The iron so laid was purchased from plaintiffs, and they received, in payment, the bonds in suit.

Under the acts in question, assuming them to be constitutional, the county had authority, upon certain conditions, to make a subscription to the capital stock of the Grenada, Houston & Eastern Railroad Company, now the Vicksburg & Nashville Railroad Company, and its board of supervisors was invested with power to determine whether those conditions were performed, and, upon their being performed, to issue bonds in payment of such subscription. According to the settled doctrines of this court, the county is estopped, as against the plaintiffs, to say that the conditions were not duly performed; for, the recitals in the bonds import that they were issued in pursuance of the acts of 1860 and 1871, and in obedience to a vote at an election held in accordance with the provisions of said acts. *Coloma* v. *Eaves*, 92 U. S. 484; *Buchanan* v. *Litchfield*, 102 U. S. 278; *Northern Bank* v. *Porter Township*, 110 U. S. 608, 617; *Otoe County* v. *Baldwin*, 111 U. S. 1. Upon this general question there seems to be no disagreement between this court and the Supreme Court of Mississippi. *City of Vicksburg* v. *Lombard*, 51 Mississippi, 111, 126; *Cutler* v. *Board of Supervisors*, 56 Mississippi, 115, 123.

But it is contended that the act of March 25, 1871, in violation of the Constitution of Mississippi, authorized—by its reference to the act of February 10, 1860—a subscription upon the assent thereto of a bare majority of its qualified electors voting, and, consequently, the recitals in the bonds do not protect even a *bona fide* holder. This is not, in our judgment, a proper interpretation of that act. Its express requirement is that elections to determine the question of subscriptions be held and conducted, in all things, as required by the act of which it is amendatory, and by "the Constitution and laws of this State in force at the time so held." As Grenada County came into

existence after the Constitution of 1869 went into operation, it could not, even under legislative sanction, make a valid subscription to the stock of a corporation unless two-thirds of its qualified voters, at a special or general election, assented thereto. That the legislature, when passing the act of 1871, had in mind the constitutional provision relating to municipal subscriptions to the stock of corporations, is plain from the second section of the act which authorizes certain incorporated towns, including the town of Grenada, to subscribe to the stock of the Grenada, Houston & Eastern Railroad Company, when such subscription should be approved by " a constitutional majority of two-thirds of the votes polled at an election regularly held " —a provision which this court adjudged in *Carroll County* v. *Smith*, 111 U. S. 556, to be consistent with the Constitution of Mississippi. It cannot be supposed that the legislature intended to invest the town of Grenada with power to make a subscription when assented to by two-thirds of the electors voting; and, in the same act, to invest the county with authority to subscribe upon the assent of a bare majority of the electors voting. And yet the argument imputes such diverse purposes to the legislature of the State, if the act of 1871 be construed as authorizing, in violation of the State Constitution, a county subscription upon the assent of a bare majority of the electors voting. The act of 1860 required twenty days' notice of the election, of the amount proposed to be subscribed, and in what number of instalments to be paid. These provisions were left untouched by the act of 1871. But the requirement in the latter act of conformity, in all things, to the Constitution and laws in force when the election was held, implies that the legislature did not intend to authorize a municipal subscription upon the vote of a bare majority, but only upon the condition prescribed in the Constitution, namely, a two-thirds majority of the electors of the county.

It certainly cannot be said that a different construction is required by the obvious import of the words of the statute. But if there were room for two constructions, both equally obvious and reasonable, the court must, in deference to the legislature of the State, assume that it did not overlook the provisions

of the Constitution, and designed the act of 1871 to take effect. Our duty, therefore, is to adopt that construction which, without doing violence to the fair meaning of the words used, brings the statute into harmony with the provisions of the Constitution. Cooley Constitutional Law, 184–5; *Newland* v. *Marsh*, 19 Ill. 376, 384; *People* v. *Supervisors, &c.*, 17 N. Y. 235, 241; *Colwell* v. *May*, 4 C. E. Green (19 N. J. Eq.) 245, 249. And such is the rule recognized by the Supreme Court of Mississippi in *Marshall* v. *Grimes*, 41 Miss. 27, 31, in which it was said: "General words in the act should not be so construed as to give an effect to it beyond the legislative power, and thereby render the act unconstitutional. But, if possible, a construction should be given to it that will render it free from constitutional objection, and the presumption must be that the legislature intended to grant such rights as were legitimately within its power." Again, in *Sykes* v. *Mayor, &c.*, 55 Mississippi, 115, 143: "It ought never to be assumed that the law-making department of the government intended to usurp or assume power prohibited to it. And such construction (if the words will admit of it) ought to be put on its legislation as will make it consistent with the supreme law."

It is worthy of observation that the board of supervisors of Grenada County understood the act of 1871 as requiring conformity to the Constitution, for they were careful to make a record of the fact that the proposed subscriptions had been sustained by "a constitutional majority of two-thirds of the legal and registered voters of said county."

It results that, in respect of such of the bonds in suit as, according to the evidence, were issued in payment of the subscription to the stock of the Grenada, Houston & Eastern Railroad Company, that there was valid legislative authority as well for the subscription as for the issue of the bonds; consequently, the county is liable upon them.

It only remains to determine whether the county is liable upon such of the bonds in suit as were delivered to the Vicksburg & Nashville Railroad Company in discharge of the subscription of $50,000 voted in aid of the construction of the "so-called Vicksburg & Grenada Railroad." We have seen

that when that subscription was voted there was no such corporation as the Vicksburg & Grenada Railroad Company, but that the vote had reference to an organization or scheme, the managers of which proposed to construct a railroad connecting the cities of Grenada and Vicksburg; that these managers were shortly thereafter incorporated as the Vicksburg, Yazoo Valley & Grenada Railroad Company, which was subsequently, and before the bonds were issued, merged in the Vicksburg & Nashville Railroad Company. We have also seen that the Vicksburg & Nashville Railroad Company was empowered to construct a railroad from Grenada to Vicksburg, and, by the terms of the consolidation agreement with the Vicksburg, Yazoo Valley & Grenada Railroad Company, obligated itself to do so.

Such were the circumstances attending the passage of the act of 1872, the fourth section of which confirmed and legalized the action of the voters of Grenada County and its board of supervisors in the matter of a county subscription in aid of the construction of a railroad from Grenada to Vicksburg. The evident purpose of that act was to give effect to the will of the voters, as expressed at the election of 1871, by a majority large enough, under any construction of the Constitution, as a basis for a valid municipal subscription to the stock of a railroad corporation. The act of 1872 recites that the proposed subscription was approved by the requisite constitutional majority. Had the action of the voters and of the board of supervisors been taken under legislative authority previously conferred, there could be no doubt of the validity of the subscription, or of the power of the board of supervisors to issue bonds; for it is to be observed, the State Constitution of 1869 does not prohibit municipal subscriptions to the stock of railroad companies under all circumstances, but only forbids the legislature from authorizing them except where two-thirds of the qualified voters of the municipality assent thereto. "It is not an open question in this State," said the Supreme Court of Mississippi, "that the legislature may authorize a county or town to aid a railroad. That power was held to exist under the former Constitution, and the present Constitution distinctly recognized it."

Art. 12, § 4. . . .. "If it were not for the constitutional restriction, the legislature could authorize a county, city, or town to aid in any of these modes railroads, or other public enterprises, without the assent of the qualified voters." *N. O., &c., Railroad Co.* v. *McDonald,* 53 Miss. 246. Thus the Constitution recognized subscriptions to railroad companies as within the scope of the powers which municipal corporations might exercise under legislative sanction. While the legislature could not, after the adoption of the Constitution of 1869, have legalized a municipal subscription assented to by a less majority of legal voters than is prescribed in that instrument, its power, by retrospective enactment, to confirm and legalize a municipal subscription to the stock of a railroad corporation to which the constitutional majority of electors had assented at an election of which due notice was given, cannot we think, be successfully disputed. Since what was done in this case by the constitutional majority of qualified electors, and by the board of supervisors of the county, would have been legal and binding upon the county had it been done under legislative authority previously conferred, it is not perceived why subsequent legislative ratification is not, in the absence of constitutional restrictions upon such legislation, equivalent to original authority. In *Sykes* v. *Mayor, &c., of Columbus,* 55 Miss. 115, 137, it was held that, after the Constitution of 1869 took effect, the legislature could not, by retrospective enactment, make valid an issue of municipal bonds executed prior to the adoption of that instrument without legislative authority; because, said the court, "the measure of its power was the Constitution of December, 1869, and it could not ratify an act previously done, if at the date it professed to do so it could not confer power to do it in the first instance. It could authorize a municipal loan conditionally. In order to ratify and legalize a loan previously made, it was bound by the constitutional limitation of its power." Further, in the same case: "The idea implied in the ratification of a municipal act performed without previous legislative authority is, that the ratifying communicates authority, which relates back to, and retrospectively vivifies and legalizes, the act, as if the power had been previ-

ously given.. Such statute is of the same import as original authority. . . . If the Constitution had altogether denied to the legislature the delegation of such power to counties, cities, and towns, it is manifest that it could not vitalize and legalize a subscription made before its adoption, and without authority of law. If that be so, it follows that, in dealing with the subject at all, it is bound by the limitation of section 14 of article 12 of the Constitution."

In *Cutter* v. *Board of Supervisors*, 56 Miss. 115, the question was as to the power of the legislature to ratify and legalize certain municipal bonds issued to a railroad corporation by a county board of supervisors, in pursuance of a vote of the people, with interest coupons attached, payable semi-annually. The statute under which the board proceeded authorized bonds with interest payable annually. The people, however, voted for bonds with interest payable semi-annually. The court sustained the constitutionality of the curative act. It was said: "This is far from being an effort to impose a debt on the county without its consent. The agreement of the people of the county to incur the debt, in the precise shape which it . assumed, has been expressed. Their representatives, the county authorities, in execution of that will, have delivered the bonds and the legislature afterwards affirmed. . If there has been any departure from the letter of the original authority, it acquiesces in such deviation, cures the irregularity, and makes valid the bonds. The principles announced in *Supervisors* v. *Schenck*, 5 Wall. 772, 776, 789, fully support these views."

These doctrines are in accord with the views of this court as indicated in several cases. *Ritchie* v. *Franklin*, 22 Wall. 167; *Thompson* v. *Lee County*, 3 Wall. 327; *City* v. *Lamson*, 9 Wall. 477, 485; *St. Joseph* v. *Rogers*, 16 Wall. 644, 663; *Campbell* v. *City of Kenosha*, 5 Wall. 194.

Our conclusion is that the act of 1872, requiring bonds of Grenada County to be issued to the Vicksburg & Nashville Railroad Company in payment of the subscription voted in 1871 by the constitutional majority of its voters, for a railroad from Grenada to Vicksburg, is not in conflict with the Constitution of Mississippi. Consequently, there is no ground upon

which the county can escape liability upon them to the plaintiffs, who are *bona fide* holders for value. Indeed, there is nothing of substance in the defence made by the county beyond the question of legislative authority for the subscriptions, in payment of which the bonds in suit were issued, and passed to the plaintiffs for iron used on one of the proposed roads.

Other questions of minor importance are discussed in the very able brief of counsel for the county. But they do not, in our opinion, affect the right of plaintiffs to judgment, and need not be noticed.

We perceive no error in the record, and the judgment is

*Affirmed.*