G. C. Sparks, as Mayor, *et al.,* v. Fred Ewing, *et al.*

163 So. 112.
Opinion Filed May 1, 1935.
On Rehearing September 26, 1935.

C. L. Chancey and Casey & Walton, for Appellants;

R. P. Terry, Ben Shepard, F. O. Spain and John P. Stokes, for Appellees.

WHITFIELD, C. J.—This appeal is from a decree enjoining taxation for payment of municipal bonds which are alleged to be invalid. The facts are fully stated in the opinion prepared by Mr. Presiding Justice ELLIS.

The question presented is not the validity of, but a construction of, the statute under which municipal bonds were issued after they had been validated by a judicial decree that is *res adjudicata*. This is not a direct proceeding to test the validity of the bonds before their issue, but it is in the nature of a collateral attack upon the validity of the bonds after they have been judicially decreed to be valid and have been issued and sold.

The main contention is that in issuing the bonds under the special municipal charter statute by ordinances adopted for that purpose, and without an approving vote of the electors, a general statute requiring such an approving vote should not have been ignored because, it is argued, the special statute authorizing bonds to be issued upon ordinances adopted, is not inconsistent with the general law requiring an approving vote of the electors, and that under Section 24, Article III, of the Constitution, both the special charter statute and the general statute should have been applied in issuing the bonds, which statutes taken together required the adoption of ordinances and also an approving vote of the electors of the city before municipal bonds are issued.

But even if a judicial construction of the statutes required an approving vote of the electors before the bonds could be properly issued under the statutes, that question is not

now an open one, as to bonds that have been validated by a judicial decree which is *res adjudicata,* no appeal having been taken therefrom. Even if the construction put upon the statutes by the validating decree now *res adjudicata,* be overruled by the appellate court in this or any suit, the bonds issued under a validating decree that has become *res adjudicata* are not thereby affected, since the decree not appealed from made them valid, at least where the bonds do not violate an express provision of the Constitution as was the case in Weinberger v. Board Pub. Ins., 93 Fla. 740, 112 So. 253.

Sections 5106 (3296) *et seq.* C. G. L. prescribe the procedure by which a county, municipality or other taxing district may by suit in the Circuit Court, with appeal to the Supreme Court, have judicially determined "its authority to incur bonded debt and the legality of all proceedings had or taken in connection therewith," and enacts, Section 5109 (3299):

"In the event no appeal is taken within the time prescribed herein, or if taken, and the decree validating said bonds or certificates is affirmed by the Supreme Court, the decree of the Circuit Court validating and confirming the issuance of the bonds or certificates shall be forever conclusive as to the validity of said bonds or certificates against the county, municipality, taxing district, or other political district or subdivision issuing them, and against all taxpayers and citizens thereof; and the validity of said bonds or certificates shall never be called in question in any court in this State."

This Court has held that:

"Any matter or thing affecting the power or authority of the several political subdivisions mentioned in Section 3296, Rev. Gen. Stats. 1920, to issue bonds or the regularity or

legality of their issue, including questions of both law and fact, insofar as those matters or things could be lawfully prescribed, regulated, limited, or dispensed with by the Legislature in the first instance, or subsequently cured by a validating Act, may be put in repose by a decree rendered pursuant to Section 3296, *et seq.*, Rev. Gen Stats. 1920. So, also, may constitutional rights or privileges which are designed solely for the protection of property rights of the individual concerned, and which he may waive, or with reference to which he may estop himself, or as to which the Legislature may lawfully limit the period of time within which such right or privilege may be exercised." Weinberger v. Bd. Pub. Inst., 93 Fla. 470, 112 So. 253.

Concurring Opinion:

"Bonds to be paid by taxation can be issued only as authorized by law, and when the issue of such bonds is regulated by specific provisions of the Constitution, such provisions cannot be waived; and bonds issued in violation of the organic commands can have no authorized existence, and are necessarily void, if the Constitution controls.

"Where the Constitution contains provisions regulating the issue of bonds by governmental subdivisions or agencies of the State, such provisions are the controlling law. Bonds issued in violation of such organic provisions are unauthorized and void, and cannot be authorized or rendered valid by legislative enactment; and the same rule applies to judicial validations of bond issues when the organic provisions are not duly adjudicated. But where the validation is by competent judicial procedure, and the particular organic provisions were duly adjudicated to have not been violated by the particular bond issue, such bonds, if sold and delivered to innocent parties for fair value upon the faith of the adjudication for validity, and otherwise valid,

may be protected as property by the Constitution (State, *ex rel.* Nuveen, v. Greer, 88 Fla. 249, 102 So. 739, 37 A. L. R. 1298; Pennington v. Van, 48 S. D. 277, 204 N. W. 17, text 19), though the adjudication, if found to be erroneous, may not be binding as a precedent in future adjudications on the same organic provisions. The previous decision may be overruled, but that would not affect rights duly acquired while the prior decision was effective. Christopher v. Mungen, 61 Fla. 513, 55 So. 273; State, *ex rel.* Nuveen, v. Greer, 88 Fla. 249, 102 So. 739, 37 A. L. R. 1298.

"Statutes validating governmental bond issues may cure statutory or administrative procedural defects (Givens v. Hillsborough County, 46 Fla. 502, 35 So. 88, 110 Am. St. Rep. 104; Rogers v. City of Keokuk, 154 U. S. 546, 14 S. Ct. 1162, 18 L. Ed. 74; Grenada County Sup'rs v. Brogden, 112 U. S. 261, 5 S. Ct. 125, 28 L. Ed. 704; 15 C. J. 627; Charlotte Harbor & N. R. Co. v. Welles, 260 U. S. 8, 43 S. Ct. 3, 67 L. Ed. 100) ; and statutory judicial proceedings validating bond issues may, if so provided by statute or valid rule of procedure, operate to estop the same parties from further litigation as to all matters, organic or otherwise, that were duly adjudicated in the validating proceedings, as well as all statutory or other non-organic procedural defects and irregularities that reasonably should have been litigated in the validation proceedings. Thompson v. Frostproof, 89 Fla. 92, 103 So. 118; Lyle v. State, *ex rel.* Caldwell, 69 Fla. 97, 67 So. 547. See also Peacock v. Feaster, 52 Fla. 565, 42 So. 889; 34 C. J. 818; Floresheim v. Board of Com'rs of Harding County, 28 N. M. 330, 212 P. 451; Bartlesville v. Holm, 40 Okl. 467, 139 P. 273, 9 A. L. R. 627; Cromwell v. Sac. County, 94 U. S. 351, 24 L. Ed. 195; Southern Pac. R. Co. v. U. S., 168 U. S. 1, 18 S. Ct. 18,

42 L. Ed. 355; 34 C. J. 874. But such validating statutes cannot make valid bonds that are void because issued in violation of the specific commands or requirements of the Constitution; and any provision of a statute to the effect that bonds which have been judicially validated shall be conclusively valid and not subject to judicial controversy, cannot preclude or estop proper parties from invoking appropriate judicial inquiries as to whether the bonds violate definitely applicable provisions of the controlling organic law, when the constitutional question has not been adjudicated. Likewise the validity of bonds as against definite organic requirements is not conclusively established by judicial adjudications when the organic provisions alleged to have been violated were not considered and duly adjudicated in the judicial proceedings. Otherwise the Constitution would not be the dominant law, and by indirection the controlling organic law would be rendered impotent and circumvented by legislative or judicial action, when both the legislative and the judicial power are subject to the Constitution as the supreme law that must be made effective, notwithstanding any enactment or adjudication to the contrary." Weinberger v. Bd. Pub. Inst., 93 Fla. 470, text 491, 112 So. 253, text 260.

In this case the Constitution does not regulate the method of issuing bonds as in Section 17, Article XII, adopted in 1924; Weinberger v. Bd. Pub. Inst., 93 Fla. 470, 112 So. 253. Nor does the Constitution impliedly forbid the issue of bonds by the municipality for the intended purpose as in State, ex rel., v. L'Engle, 40 Fla. 392, 24 So. 539; Brown v. City of Lakeland, 61 Fla. 508, 54 So. 716; Munroe v. Reeves, 71 Fla. 612, 71 So. 922. Nor was there, when the bonds were issued in 1926, any organic provision which expressly or impliedly forbids the issue of municipal bonds

without the approving vote of the electors, though Section 6, Article IX, was subsequently amended in 1930, forbidding counties, districts and municipalities to issue original bonds except upon a prescribed vote of described electors. See City of Jacksonville v. Renfroe, 102 Fla. 512, 136 So. 254.

The Constitution does provide that:

"The Legislature shall establish a uniform system of county and municipal government, which shall be applicable, except in cases where local or special laws are provided by the Legislature that may be inconsistent therewith."

This organic provision requires an interpretation of statutes to determine which of them controls a statutory matter, but it is not an express or an implied regulation of matters which may be regulated by statute, further than to require a special law to supersede an inconsistent general law to the extent of inconsistency.

The question which necessarily was determined by the validating decree, is that the provision of the special or local charter statute that bonds may be issued by ordinance, is inconsistent with the requirement of the general statute that municipal bond issues must have the previous approving vote of the described electors of the municipality; and, being inconsistent with the general law, the special Act excludes the operation of the general law and consequently the bond issue here considered, made according to the special law is valid, though no approving vote was taken under the general law.

Even if the decision be erroneous, it cannot now be reversed, since it was not appealed from in due time and is now *res adjudicata,* making the bonds so validated binding obligations of the municipality, though the validating decision be overruled in the future. The bonds do not vio-

late any express or implied provision of the Constitution in force when the bonds were issued.

In City of Apalachicola v. State, 93 Fla. 921, 112 So. 618, the proceeding was to validate bonds which had not yet been issued by the municipality and the construction required by Section 24 of Article III of the Constitution was applied. Here the bonds have been validated and sold, and the validating decree has become *res adjudicata*. See West v. Town of Lake Placid, 97 Fla. 127, 120 So. 361.

In Weinberger v. Board, 93 Fla. 470, 112 So. 253, the bonds had been validated by judicial decree, but as the terms of the bonds violated a specific provision of the Constitution, Section 17, Article XII, which expressly regulates the particular subject, the bonds were invalid and could not be validated by statute or by judicial decree, therefore the validating decree did not prevent a decree from enjoining the issue of the bonds before they were sold.

In State, *ex rel.* Bours, v. L'Engle, 40 Fla. 392, 24 So. 539, Brown v. City of Lakeland, 61 Fla. 508, 54 So. 716, Munroe v. Reeves, 71 Fla. 612, 71 So. 922, the bonds violated implied prohibitions of the Constitution, and had not been validated. See State, *ex rel.* Nuveen, v. Greer, 88 Fla. 249, 102 So. 739, 37 A. L. R. 1298; Nuveen v. City of Quincy, 115 Fla. 510, 156 So. 153.

The decree is reversed.

TERRELL, BUFORD and DAVIS, J. J., concur.

BROWN, J., concurs in the conclusion.

ELLIS, J., dissents.

ELLIS, P. J. (dissenting).—A bill of complaint was exhibited by Fred Ewing, C. W. Vaughn and J. W. Kaminski, citizens and taxpayers of the City of Hialeah, against G. C. Sparks, as Mayor, and other officials of the city, and

Alton M. Ake in the Circuit Court for Dade County, Eleventh Judicial Circuit of Florida.

The purpose of the bill was to restrain the city through its officers from selling the property of the complainants for the non-payment of taxes for the year 1932 assessed for the purpose of raising funds with which to pay certain bonds issued by the city and to restrain it from assessing the complainants' property in any amount for that purpose and to restrain it from paying over to Alton M. Ake any funds on hand raised by the city for the payment of the bonds and interest thereon.

The officials of the City of Hialeah in September or October, 1926, issued five hundred thousand dollars of bonds in denominations of one thousand dollars as general obligations of the city. The defendant Ake acquired five of the bonds upon which interest had accrued amounting to seven hundred and twenty dollars, which he was seeking by mandamus against the city officials to collect.

The bill alleges in substance that the bonds were issued without any authority of law as no power existed by general law or under the city charter, in the city to issue them, that the bond issue was never validated by Act of the Legislature nor by any decree of the Circuit Court and no election was held in the city to determine whether such bonds should be issued; that a petition to validate the bonds was filed in the Circuit Court for Dade County in September, 1926; that the State Attorney interposed an answer admitting that the bonds should be validated, but the answer was made without investigating the issue; that no notice to taxpayers was ever published as required by law; that the affidavit showing a publication of such notice was false in that it stated that such a notice was published on September 10th and 17th and 24th, when in truth it was not published on

the 24th of that month as the printing plant was destroyed by fire on September 18th and had not been replaced or repaired on the 24th of that month and no circulation of the notice to taxpayers of the pendency of the validation proceedings was given on that date and the complainants had no notice of the publication of any notice of such proceedings nor did they know of the pendency of the proceedings; that the defects in the alleged validation proceedings were not known to the complainants earlier than seventy-two hours before they began this suit and that the decree entered in the proceeding was void.

It is alleged that in August, 1926, the City Council adopted an ordinance numbered 43 under which the officials of the city proceeded to issue the bonds; that neither that ordinance nor any other provides for an election of the registered voters of the city to determine whether such bonds should be issued; that the ordinance was void and conferred no power upon the city to obligate itself by the bond issue; that the city levied a tax of seven mills on the dollar of the assessed valuation of the real estate, but as six mills of that amount was levied for numerous items, among which the above mentioned alleged bonded indebtedness and interest constituted one of such items, and the complainants have been unable to ascertain what part of the levy of seven mills constitutes a valid tax levy, they have not tendered, nor been able to do so, any certain amount of valid taxes due; that the city is threatening to sell the property of the complainants for the illegal tax for the year 1932 and threatens to levy a tax for such illegal purpose for the following year.

The Chancellor issued a temporary restraining order as prayed for in the bill. By an order made in May, 1933, Alton M. Ake was restrained from further prosecuting the

mandamus proceedings against the City for the payment to him of any money in discharge of the accrued interest upon the bonds held by him.

The officials of the city answered the bill setting up Sections 46 and 47 of the City's Charter as authority for the issue of the bonds. The answer admitted that there was no election held in the city to determine whether the bonds should be issued, but averred that the power existed to issue the bonds which was exercised by the passage of the ordinance mentioned and that such issue was validated by the decree of the Circuit Court.

Several alleged owners of some of the bonds issued were made defendants by amendment to the bill and they answered admitting their ownership of certain of the bonds.

Alton M. Ake answered the bill admitting his ownership of five of the bonds; averred the legality of their issue and that they were issued to raise funds for lawfully authorized municipal purposes, and averring the validity of the court decree validating the bond issue.

Testimony was taken and the Master made his report which was filed in October.

The decree of the Chancellor found the equities to be with the complainants. The injunction previously entered was made perpetual. The defendant bondholders were enjoined from attempting to collect the bonds and coupons held by them, and Mr. Ake was restrained from proceeding with the mandamus case, and the officers of the city restrained perpetually from in any manner recognizing the bonds and coupons as valid obligations of the city.

The defendant Ake filed a petition for a rehearing which was denied. The officials of the city and Mr. Ake took an appeal.

The questions presented by the appellants in their brief

are, taken in the reverse order in which they are presented, whether the City of Hialeah had authority to issue bonds of the city under the provisions of the Charter, which was Special Act 11516 of the Extraordinary Session of 1925, without an election held under the provisions of Sections 3010, 3011 C. G. L. 1927, and were the bonds so issued without such an election void?

The second question is necessarily embraced in the one just stated as it presents the question of legislative power to authorize a municipality incorporated under a local or special charter to issue bonds for municipal purposes without an election to determine whether bonds shall be issued. As no legislative authority was exercised attempting to vest such power in the City of Hialeah except as evidenced by the provisions of Chapter 11516, *supra,* the question is did such Act vest the city with such power.?

The first question, as listed in the brief, is whether a taxpayer of the city may enjoin the prosecution of a previously instituted mandamus proceeding by the owner of city bonds to enforce the payment of the city of past due interest coupons attached to such bonds on the grounds that the bonds issued by the city and acquired by the holder thereof are void?

Chapter 11516 of the Extraordinary Legislative Session of 1925 constitutes the Charter of the City of Hialeah. It was approved by the Governor in November, 1925.

The city was empowered to contract and be contracted with and to sue and be sued; to raise money annually by taxation as the City Council shall deem necessary for the purposes of the city; to pave streets, sidewalks and public highways, and hold liens therefor and to regulate the use of the highways; to impose special or local assessments for local improvements; to contract debts, borrow money

and make and issue evidence of indebtedness; to expend money for lawful purposes; to acquire real and personal property; to make public improvements, acquire and maintain, aviation fields, golf courses, swimming pools, museums and other "cultural and educational institutions"; to purchase and operate local and public utilities; to acquire lands to provide an adequate water supply; to establish and improve water rates and charges for gas and electricity; to operate bathing beaches, public landing wharves and docks within the city; to grant franchises for public utilities; to abate nuisances; to establish and regulate the operation of a fire department; to support orphans, sick and aged people; to provide for the general health; to exercise full police powers and to provide for the general welfare. Many other powers were enumerated and there was a general clause empowering the city to "exercise all other powers not enumerated herein, conferred on cities and towns by the general laws of the State of Florida."

Section 45 of the Act provides that when necessary to supply deficiencies in revenue the city may obtain temporary loans for said purpose and issue a note or notes therefor to an amount which at no time shall exceed one-half of one per cent. of the assessed value of the taxable property in the city according to the last tax assessment roll preceding the said loan or loans and no loan shall be for a longer period of time than one year, etc., cannot be considered as authority for borrowing money on a long time loan and executing bonds as evidence of the obligation. The section should be considered in connection with the general provision in Sub-Section 3d of Section 3 which provides as stated above that the city shall have power "To contract debts, borrow money and make and issue evidences of in-

debtedness." That power was limited by the provisions of Section 45 above mentioned.

That such is the correct interpretation of the sections of the Act is evidenced also by other provisions which require a submission by the Mayor to the City Council of a budget estimate of the expenditures and revenues of all city departments, divisions and offices for the ensuing fiscal year. The regulations respecting annual appropriations to meet the necessary expenses of the city government and expressly prohibiting any officer or employee of the city to incur any liability except in accordance with the provisions of the annual appropriation ordinance also indicate that there was no purpose to vest in the city the power by the general provision for contracting debts to extend the debt service beyond the necessities which a deficit in the annual revenues for ordinary expenses may entail.

The Charter of the City, which is very full, provides with meticulous care in minute detail how and in what manner the numerous powers of the city may be exercised. It is provided that bonds for two purposes may be issued. One purpose may be for any municipal purpose except for maintenance and repairs. Such bonds become general obligations of the city and are limited in an amount not exceeding twelve and one-half per cent. of the fair market value or twenty-five per cent. of the full cash value of the taxable property within the city as the same shall appear upon the tax assessment roll next preceding the issuing of the bonds.

The other purpose is for local improvements in which are included highway improvements, sidewalk, sanitary sewer, storm sewer and water front improvements. Under the provisions of the Charter for the latter purpose the assessments against specific property for such purpose are pledged to the payment of the principal and interest of the

bonds authorized under those provisions to be issued.
Bonds may be issued for the entire cost of the improvement,
but not in excess of the contract price and estimated cost
of incidental expenses. Such bonds need not be limited
in amount to the cost of any one improvement. The Act
does not require the question of issuing such bonds or the
making of such improvements to be submitted to the voters.
It is expressly provided that in such case the initiative and
referendum provisions of the Charter shall not be appli-
cable. It is in reference to bonds issued for such purpose
that the provisions of the Charter that no irregularity or
illegality in connection with any of the proceedings au-
thorized shall effect the orders for such improvements or
the special assessments or bonds or contracts issued, apply.
Such bonds have all the qualities of negotiable paper under
the law merchant and are incontestable in the hands of *bona
fide* purchasers, so the statute provides.

The sections of the Act relating to such improvements
and the bonds which may be issued for such purpose are
Sections 48 to 66, inclusive.

Those sections of the Act relating to the issuing of bonds
by the city which become general obligations of the city for
the payment of which a general tax may be levied are Sec-
tions 46 and 47. These sections grant the power to the
municipality of issuing such bonds in the following words:

"Sec. 46. Within one year after this Act takes effect,
the City Council is hereby authorized to provide by ordi-
nance for the issuance of bonds in an amount not to exceed
One Million Dollars, of such denominations, bearing such
rates of interest not exceeding six per cent., becoming due
at such time not exceeding thirty years from the date of
issuance, and upon such conditions as may be prescribed by
ordinance. Said bonds shall not be sold for less than ninety

per cent. and accrued interest and the proceeds from the sale of said bonds may be used for any municipal purpose.

"Sec. 47. The City Council is hereby authorized to provide by ordinance for the issuance of bonds for any municipal purpose except for maintenance and repairs in an amount not exceeding twelve and one-half per cent. of the fair market value or twenty-five per cent. of the full cash value of the taxable property within the City, as the same shall appear on the tax assessment roll next preceding the issuance of the bonds, of such denominations, bearing such rate of interest not exceeding six per cent., becoming due at such times, not exceeding thirty years from the date of issuance, and upon such conditions as may be determined by ordinance."

The remainder of Section 47 has to do with the sale of the bonds.

The grant of power is not absolute. It is coupled with the restriction that the Council shall provide by ordinance for the issuance of the bonds. As the municipality has only such power as the Legislature expressly or by necessary implication confers upon it, see Scott v. City of Tampa, 62 Fla. 275, 55 South. Rep. 983; State, *ex rel.* Simpson, v. Ackerly, 69 Fla. 23, 67 South. Rep. 232; Anderson v. Shackleford, 74 Fla. 36, 76 South. Rep. 343; Malone v. City of Quincy, 66 Fla. 52, 62 South. Rep. 922, Ann. Cas. 1916D, 208 n; Wyeth v. Whitman, 72 Fla. 40, 72 South. Rep. 472; State, *ex rel.* Ellis, v. Tampa Water Works Co., 56 Fla. 858, 47 South. Rep. 358, 19 L. R. A. (N. S.) 183; Ferguson v. McDonald, 66 Fla. 494, 63 South. Rep. 915, and as all doubts as to the existence of a power in a municipality should be resolved against the city, State, *ex rel.* Triay v. Burr, 79 Fla. 290, 84 South. Rep. 61, it follows

that the Council cannot by ordinance vest in the city a power which has not been vested in it by the Legislature.

The phrase, therefore, "authorized to provide by ordinance for the issuance of bonds" must necessarily mean that if the power to issue bonds is granted by the Legislature in certain circumstances or coupled with certain conditions or restrictions the Council is authorized by ordinance to provide the machinery by which the city may avail itself of the exercise of the power in accordance with the conditions and restrictions imposed. The phrase merely means that the city by and through its Council shall signify its acceptance or use of the power granted by making due provision for the utilization of it.

The City Charter of the City of Hialeah, Chapter 11516, *supra*, as above shown provides that the city may "exercise all other powers not enumerated herein, conferred on cities and towns by the general laws of the State of Florida." See Sub-Sec. 3mm of Sec. 3.

In the matter of issuing bonds by the city, which, as in the case at bar purport to be a general obligation of the city for the payment of the principal and interest thereof a general tax may be levied upon all the taxable property in the city, the inquiry is what powers not enumerated in the Charter are conferred on cities and towns by the general laws of the State?

The general laws of the State on that subject are expressed in Sections 3008, 3009, 3010, Compiled General Laws 1927. Section 3008 vests the power in the city Council to borrow money or contract loans for the use of the city with the approval of a majority of the registered voters of the city residing therein who own real estate in the city and have paid their taxes for the preceding year and actually voting. Section 3009 vests the power in the City Council

to issue bonds only with the approval of two-thirds of the registered voters of the city having the qualifications named, and Section 3010 provides that before any such bonds are issued the question of issuing them as well as the amount to be issued shall be submitted to the electors of the city having the qualifications mentioned in the manner and after such public notice as may be deemed necessary by the City Council. That section as well as Section 3009 requires an affirmative vote of two-thirds of the votes actually cast by the electors in favor of the bond issue before the bonds may be issued.

It is apparent that the general law vests in the electorate of the city initiatorily the power to determine whether the bonds of the character described in the bill should be issued and if that approval is not obtained it is not lawful declares the statute for the bonds to be issued. See Stern v. City of Fargo, 18 N. D. 289, 122 N. W. Rep. 403.

The general statutes provide, it is true, that the bonds may be issued when it is deemed necessary for building of public works, but the Charter of the City of Hialeah provides specially for the building of such public works as highway improvements, sidewalk, sanitary sewer, storm sewer and water front improvements, and provides that the assessments made against property for the special benefits incident to such improvements shall be the pledge for the payment of the principal and interest of the bonds issued for that purpose.

So when it is desired to issue bonds which are general obligations of the city, which require a general tax to retire, no power exists in the city or its Council to issue them until the electorate of the city by a vote of two-thirds of those actually voting in the election approve of the proposition. Without such approval bonds issued by the City Council

of the character of those described in the bill are void. They have no more binding obligation upon the city than if they had been issued by some clerical or administrative agency of the city government. No greater power in that regard exists in the Council than in the Fire or Police Departments.

The City Council is required to provide for the means of exercising the power by the electorate by enacting an ordinance for the holding of an election after due notice to decide the question.

The ordinance which the Council adopted in August, 1926, and which was numbered 43, under which the bonds referred to were issued, makes no provision for an election. It recites in its preamble that the City Council deemed it necessary and expedient to issue the bonds. Some of the bonds to be issued were to run for a period of thirty years before maturing. Some of the purposes to which the money was to be applied were such public improvements that for the construction of which the local assessments for benefits would under the Charter constitute the pledge for the redemption of the bonds. Other purposes were such that required a vote of the electorate to approve before the bonds should be issued. The ordinance provided that the bonds should recite that the levy and collection of a direct annual tax upon all the taxable property in the city would be made to repay the indebtedness evidenced by the bonds.

The City of Hialeah was not exempt by its Charter from the operation of the general law relating to the issuing of municipal bonds as a general obligation of the city. There are no provisions in the local law upon the subject inconsistent with those of the general law. See City of St. Petersburg v. Pinellas County Power Co., 87 Fla. 315, 100 South. Rep. 509; City of Apalachicola v. State, 93 Fla.

921, 112 South. Rep. 618; West v. Town of Lake Placid, 97 Fla. 127, 120 South. Rep. 361.

It is conceded to be the general law that bonds issued by officers of a municipality or county in violation of a requirement by statute that the proposed bond issue shall be submitted to the voters to determine whether it shall be made are void and unenforceable. See 15 C. J. 580, 617; Onstott v. People, 123 Ill. 489, 15 N. E. Rep. 34; Stone v. Gregory, 110 Ky. 492, 61 S. W. Rep. 1002; Nelson v. Haywood Co., 87 Tenn. 781, 11 S. W. Rep. 885, 4 L. R. A. 648, in which latter case it was said that if the Constitution of 1870 abrogated the Act of February, 1870, authorizing the County to issue bonds the exercise of the power to issue the bonds was unauthorized and void. The Constitution of 1870 provided that bonds of the kind issued and for the purpose stated in that case should not be allowed except upon an election to be first held by the qualified voters of the county, city or town, and the assent of three-fourths of the votes cast at said election.

The principle is the same when applied to a city's authority to issue bonds where the city derives its power from a legislative enactment, because to the city the legislative Act is its Constitution. It follows, therefore, as announced in Williams v. Town of Roberts, 88 Ill. 11, that where a municipality is empowered to issue bonds for a certain purpose, but it is also required that there shall first be an affirmative vote of a majority of the electors of the municipality to that effect, no power exists to issue the bonds until after such vote shall have been obtained at an election held for that purpose called by the authority prescribed by law and upon such notice of the time and place of holding elections as the law directs.

In the case now before us the general law applicable to

municipalities upon the subject of bond issues which become a general obligation of the city, where there is no inconsistent provision in the city Charter, expressly declares that such bonds shall not issue unless in pursuance of authority conferred by a two-thirds majority of the voters in the city actually voting at an election called for the purpose. The voters of the city are alone vested with the power to determine whether the bonds should be issued. If they do not exercise the power none exists to issue the bonds. There cannot be in force at the same time within the same jurisdiction and governing the same subject matter two conflicting statutory provisions.

The Town Council of Hialeah had no legal authority to brush aside the requirements of the law and by the simple process of adopting an ordinance vest themselves with a power which the statute expressly denied to them. The bonds issued by them, therefore, under such assumed or usurped power were issued without authority of law and are absolutely null and void. See 19 R. C. L. 997.

It is next contended that the so-called court validating proceedings gave validity to the bonds and that the taxpayers of the municipality are estopped to deny their validity.

In the case of Weinberger v. Board of Public Instruction, 93 Fla. 470, 112 South. Rep. 253, this Court, speaking through Mr. Justice STRUM, said: "It must be borne in mind that there is a vital distinction between an entire absence of power under the Constitution to issue the bonds involved—which no Act of the Legislature may remedy—and the imperfect or irregular exercise of lawful authority in the issuance of the bonds. Deficiencies of the latter character may be waived or the complaining taxpayer may estop himself with reference thereto. Such deficiencies

may be cured by validation proceedings" pursuant to Section 3296 R. G. S 1920 (5106 C. G. L. 1927).

It was also said in that opinion that the Legislature by a curative statute may even validate bonds originally issued without authority provided the Legislature could have authorized the issuance of the bonds in the first instance. State, *ex rel.* Nuveen, v. Greer, 88 Fla. 249, 102 So. Rep. 739.

The principle that what the Legislature could have authorized it can ratify if it can authorize at the time of ratification, was announced in Charlotte Harbor & N. R. Co. v. Welles, 78 Fla. 227, 82 South. Rep. 770, affirmed by the Supreme Court of the United States in 260 U. S. 8, 67 L. Ed. 100.

The Act of the Legislature providing for the validation by court procedure of municipal bonds, Section 5106 C. G. L., *supra,* may not be considered as vesting in a Circuit Court the power of validation of such bonds possessed by the Legislature. The court has no power by its decree to give validity to a bond issue which the City Council in the first instance had no power under the statute to make. Although the Legislature may by a validating Act give validity to a bond issue made by the City Council without the authority of the electors voting at an election held for the purpose of determining whether the power shall be exercised, because at the time of validating such an issue the Legislature had power to authorize the issue, it does not follow that an Act authorizing a court of law or equity to inquire into the regularity of proceedings through which bonds were issued and enter a decree as to the effect of any irregularities in procedure upon the validity of such bonds, vests in the court the legislative power to make valid that which without legislative action is void *ab initio.*

The words used by this Court in some cases expressing the view that the purpose of a decree validating and confirming bonds under the law of our State is to put in repose any question of law or fact that may be raised affecting the validity of the bonds, should be construed to mean the questions of law and fact arising from alleged irregularities in procedural matters, such as the initial resolution providing for incurring the debt, the procedure in the matter of calling the election where an election is required, the conduct of the election, the recitations in the bonds, etc., but not to mean that basic requirements affecting power may be cured by a court decree.

The complainants were therefore not estopped from questioning in this proceeding the power of the City Council to issue the bonds without first providing by ordinance for the holding of an election in the city that the voters might decide whether the power vested in them to order the bond issue should be exercised as the statute requires.

That requirement was fundamental. It was a condition precedent to the imposition upon the people of the city of the debt to be evidenced by a bond issue to be a general city obligation and the attempt by the Council to issue the bonds without first obtaining the authority of the people in the manner required was a vain and utterly void act of which the purchasers of the bonds were charged with notice.

## On Rehearing.

Per Curiam.—Aside from the question of the effect of the validation proceeding, the validity of which is attacked on jurisdictional grounds, we are of the opinion that Section 46 of the City Charter Act (Chapter 11516 of the Acts of 1925) gave the City of Hialeah power to issue bonds without an election, provided such power was exercised by

ordinance within one year from the effective date of the Act and provided further that the bonds so issued during that year did not exceed one million dollars in amount. Even though it be conceded that a validating decree could not make valid municipal bonds which a municipality was entirely without power to issue in the first instance, we are of the opinion that in this case the City had the power under Section 46 of its Charter, to "provide by ordinance" for the issuance of these bonds without an election, as they were issued within the time and amount prescribed by that section.

.The Legislature must have intended to vest the municipality with this power by said Section 46; else why did they, in connection with the language, "the City Council is hereby authorized to provide by ordinance for the issuance of bonds," limit the exercise of the power to issue bonds under that section to one year, as to time, and one million dollars as to amount?

And four years later, the Legislature adopted an Act (Chap. 14095, Laws of 1929) which recognized the validity of these very bonds and authorized and directed the City of Hialeah to use the unexpended balance of the proceeds of said bonds ($195,323.00) for the payment of amounts theretofore borrowed and used to pay interest and principal of these bonds, and the balance to be used for the purchase and retirement of any of said bonds outstanding and interest accrued thereon.

For these reasons we think that our former judgment of reversal should stand.

Judgment of reversal affirmed on rehearing.

WHITFIELD, C. J., and TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.