CITY OF HIALEAH, *et al.,* v. STATE, *ex rel.* BEN HUR LIFE
ASSOCIATION, a Corporation.

174 So. 843.
Opinion Filed April 14, 1937.
Rehearing Denied June 16, 1937.

*Martin F. Whelan, Jr.,* and *Mitchell D. Price* and *Charles W. Zaring,* for Plaintiffs in Error;

*Casey, Walton & Spain, J. Velma Keen* and *Frank O. Spain,* for Defendant in Error.

WHITFIELD, P. J.—The writ of error herein was taken by the city and certain of its officers to a final judgment awarding a peremptory writ of mandamus to require the levy of taxes for paying interest coupons on bonds issued by the city under the Charter Act of the city, Chapter 11516, Acts of 1925.

In addition to other allegations, the alternative writ of mandamus alleges:

"5. The said bonds were issued under authority of and in full compliance with the said Chapter 11516, and they each so recite, in addition to which they each recite that: '* * * all acts, conditions and things required to exist or to be done precedent to and in the issuance of this bond by the laws and constitution of said State have duly happened and been performed; that provision has been made for the levy and collection of a direct annual tax upon all the taxable property within said City sufficient to pay the interest and principal of this bond as the same shall become due; and that the total indebtedness of said City, including this bond, does not exceed any constitutional or statutory limitation,' and they each also recite that: 'For the prompt

payment thereof, both principal and interest as the same become due, the full faith, credit and resources of said City are hereby irrevocably pledged.'

"6. The said bonds were validated by decree of the Circuit Court of Dade County, Florida, rendered on the 14th day of October, 1926, from which no appeal has been taken, and which said decree is in full force and effect."

The answer of respondents admits:

"That on or about September 1, 1926, the City of Hialeah by and through its then mayor and city clerk signed certain instruments purporting to be bonds or writings obligatory, * * * said writings * * * being designated as 'City of Hialeah General Improvement Bonds'; that each of said instruments was sealed with the corporate seal of the City of Hialeah and each of said instruments bore the date of September 1, 1926, and each of said instruments was in the sum of $1,000.00.

"Respondents further answering admit that in accordance with the phraseology of said bonds, the City of Hialeah acting by and through its mayor and clerk as aforesaid, acknowledge itself indebted and promised· to pay to the bearer for an alleged valuable consideration the principal sum of $1,000.00 on the date therein specified together with interest thereon." Respondents being without knowledge as to the allegations and statements contained in paragraph 5 of the alternative writ of mandamus, demand strict proof thereof; and further answering say that Chapter 11516 of the laws of the State of Florida enacted by the legislature of the State of Florida at its 1925 session was void *ab initio* and wholly unconstitutional in so far as Section 46 of said Act is concerned, which said Section 46 was the Act under which the then officials of the City of Hialeah purported to issue said bonds."

"Further answering paragraph 5 of said alternative writ, these respondents admit that the bonds contained paragraphs and provisions set forth and contained in the alternative writ of mandamus."

"Respondents further answering admit that the bonds described in paragraphs 3, 4 and 5 of the alternative writ of mandamus were validated by decree of the Circuit Court of Dade County, Florida, rendered on the 14th day of October, 1926, and that no appeal has been taken from the judgment of the Circuit Court validating same, and admit that said decree is in full force and effect as to all irregularities which might occur in the proceedings save and except the constitutional questions herein and hereby raised were not presented to the court in said validation proceedings and were not acted upon or considered by the court, and were not passed upon and determined by the final decree of the Circuit Court rendered on October 14, 1926, and said decree has never become *res adjudicata* as to said constitutional questions."

There were other similar allegations and admissions as to another issue of bonds.

Counsel for plaintiffs in error state in their briefs that: "The only questions involved in the case at bar are the constitutionality of Section 46 of Chapter 11516 of the Acts of 1925 and the validity of the bonds issued in pursuance thereof."

It is argued that the inclusion of Section 46 in Chapter 11516, violates Section 16 of Article III of the Constitution, which organic section is as follows: "Each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title; and no law shall be amended or revised by reference to its title only; but in such case the Act,

as revised, or section, as amended, shall be re-enacted and published at length."

It appears that in September, 1925, the city of Hialeah was incorporated by its inhabitants under Sections 2935 (1825) *et seq.*, C. G. L., and in November, 1925, the Legislature enacted Chapter 11516, the title and Sections 46 and 66 of said Chapter being as follows:

"AN ACT to abolish the Present Municipal Government of the City of Hialeah, Dade County, Florida, and to Abolish the Municipal Government of the Town of Hialeah, Dade County, Florida, and to Create, Establish and Organize a Municipality to be Known and Designated as the City of Hialeah, and to Define Its Territorial Boundaries, and to Provide for Its Government, Jurisdiction, Powers, Franchises and Privileges, and to Authorize the Issuance of Municipal Bonds and for Other Purposes."

"Sec. 46. Within one year after this Act takes effect, the City Council is hereby authorized to provide by ordinance for the issuance of bonds in an amount not to exceed One Million Dollars, of such denominations, bearing such rates of interest not exceeding six per cent, becoming due at such times not exceeding thirty years from the date of issuance, and upon such conditions as may be prescribed by ordinance. Said bonds shall not be sold for less than ninety per cent and accrued interest and the proceeds from the sale of said bonds may be used for any municipal purpose."

"Sec. 66. Bonds issued hereunder shall have all the qualities of negotiable paper under the law merchant and shall not be invalid for any irregularity or defect in the proceedings for the issue and sale thereof, and shall be incontestable in the hands of *bona fide* purchasers or holders thereof for value."

When the above statute was enacted, the Constitution contained the following sections:

"The Legislature shall establish a uniform system of county and municipal government, which shall be applicable, except in cases where local or special laws are provided by the Legislature that may be inconsistent therewith." Sec. 24, Art. III.

"The Legislature shall have power to establish, and to abolish, municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time. When any municipality shall be abolished, provision shall be made for the protection of its creditors." Sec. 8, Art. VIII.

In Sparks v. Ewing, 120 Fla. 520, text 542, 543, 163 So. 112, Text 121, it was held that "Section 46 of the City Charter Act (Chapter 11516 of the Acts of 1925, Ex. Sess.) gave the city of Hialeah power to issue bonds without an election." And that "the city had the power, under Section 46 of its charter, to 'provide by ordinance' for the issuance of these bonds without an election, as they were issued within the time and amount prescribed by that section."

It is now contended that Section 46 of Chapter 11516 is invalid because it violates Section 16, Article III of the Constitution in that: the title of the "Act contained no recital that the City Council was being vested with power to issue bonds without a vote of the qualified electors"; the title is not "sufficient to put the Legislature of the State of Florida and the citizens of the municipality abolished and of the territory sought to be reincorporated upon notice that unusual, radical and confiscatory power was being vested in the City Council of said newly created city, and that property owners residing in said city were being deprived of a valuable right, to-wit, the right to vote upon

the issuance of municipal bonds"; "the title to the Act" is. "insufficient to put the Legislature and the voters of the City created by said Act on notice that unusual, arbitrary and confiscatory powers were being vested in the city council and the freeholders of said City were being deprived, without their knowledge, of a well established right, to-wit, the right to vote on the issuance of interest bearing municipal bonds."

The first two commands of Section 16 of Article III of the Florida Constitution are: (1) Each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith. (2) Such subject shall be briefly expressed in the title. The intent and effect of the organic commands are to forbid the inclusion of more than one legislative subject in the enactment of a law, and to require the single subject of the enactment to be briefly stated in the title of the Act, so that the legislators and the public may be advised, by the title of the Act, of the nature and possible scope of the provisions contained in the body of the Act, in order to avoid surprise and fraud and "log rolling" legislation. The title of an Act has the effect of restricting the provisions that may be legally included in the enactment to matters properly connected with the subject expressed in the title. When the title, as in this case, is general in its nature and is not in any way misleading, but is sufficiently worded to fairly express the subject of the Act to meet the common understanding, the members of the Legislature and the public must be regarded as put upon notice as to all provisions of the Act that are germane to or properly connected with the subject that is expressed in the title of the Act.

Where one general subject is expressed in the title, the means and instrumentalities for effecting such subject need

not be stated in the title and may be regarded as matters properly connected with the subject which may properly be embraced in the Act. Only the subject of the Act, not matters properly connected with such subject need be expressed in the title. State, *ex rel.*, v. Palmes, 23 Fla. 620, 3 So. 171; Montclair v. Ramsdell, 107 U. S. 147, 2 Sup. Ct. 391, 27 L. Ed. 431; Potter v. Lainhart, 44 Fla. 647, 33 So. 251; State, *ex rel.*, v. Bryan, 50 Fla. 293, 39 So. 929; Butler v. Perry, 67 Fla. 405, 66 So. 150; Rushton v. State, 75 Fla. 422, 78 So. 345; State, *ex rel.*, v. Vestel, 81 Fla. 625, 88 So. 477; Hiers v. Mitchell, 85 Fla. 345, 116 So. 81; Howarth v. City of DeLand, 117 Fla. 692, 158 So. 294; Smith v. Chase, 91 Fla. 1044, 109 So. 94.

In Carr v. Thomas, 18 Fla. 736, the title of Chapter 1939, Laws of 1873, was restrictive, relating to "the acknowledgment of deeds and other conveyances of land," and a provision in the body of the Act that conveyances of land not recorded within six months after their execution are void as against subsequent purchasers, was held to be inoperative because violative of Section 14, Article IV, of the Constitution of 1868, which is similar to Section 16, Article III, Constitution of 1885. See also Ex-Parte Wells, 21 Fla. 280; State, *ex rel.*, v. Palmes, 23 Fla. 620, 3 So. 171; State, *ex rel.* v. Burns, 38 Fla. 367, 21 So. 290; Disston v. I. I. Board, 75 Fla. 653, 79 So. 295.

In State, *ex rel.* Wilcox, v. Armstrong, decided February, 1937, the title of the Act, Chapter 16386, Acts of 1933, was specific and restrictive in that it had relation to the assessment and levy of taxes in Daytona Beach, the regulation of the budget of said city, giving freeholders the right to amend the budget by petition and election, no one of which stated clauses included the novel and unusual provision of the Act giving to the Governor power to remove a city of-

ficial for contracting, expending or permitting to be paid out, an amount in excess of the budget appropriations. Such an exercise of power by the Governor being theretofore unknown in this state, the peculiarly restrictive title was not notice that the Act contained or might reasonably be expected to contain such an unusual power conferred upon the Governor, as matter properly connected with any statement of a subject expressed in the title of the Act. See State, *ex rel.*, v. Love, 99 Fla. 333, 126 So. 274; Webster v. Powell, 36 Fla. 703, 18 So. 441, Wade v. Atlantic Lumber Co., 51 Fla. 628, 41 So. 72; and other cases where the title was misleading as to the contents of the Act.

The provisions of Section 46 of Chapter 11516 are matters properly connected with the general subject expressed in the title of the Act, and the title of the Act is not misleading as to the contents of Section 46 of the Act.

The title of Chapter 11516 includes in the general powers conferred upon the Citty, the power "to authorize the issuance of municipal bonds."

Section 46 of the Charter Act does not authorize the City Council to issue municipal bonds; but it does authorize the City Council "to provide by ordinance for the issuance of bonds" in a stated time, in stated maximum amounts, rates of interest, and maturity of the bonds, "and upon such conditions as may be prescribed by ordinance."

The provision of Section 46 that "the City Council is hereby authorized to provide by ordinance for the issuance of bonds," within stated limitations, is in conformity with the power of the city stated in the title of the Act "to authorize the issuance of municipal bonds."

The title covers the authority conferred upon the City Council by Section 46 "to provide by ordinance for the issue of bonds," which is the usual method used in pro-

viding for the issue of municipal bonds under statutory authority, so the title of the Act is not misleading as to the contents of the body of the Act authorizing the *City Council* "to provide by ordinance for the issuance of bonds."

When the bonds involved in this suit were issued, and prior to the amendment to Section 6 of Article IX of the Constitution in 1930, the Constitution did not require a vote of the electorate to authorize the issue of county, district or municipal bonds. On the contrary, Section 8 of Article VIII of the Constitution expressly provided that: "The Legislature shall have power to establish, and to abolish, municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time."

Under this organic provision the Legislature had full authority to regulate the powers of municipalities when no other provision of the Constitution is thereby violated; and statutory authority to issue bonds without an approving vote of its electorate could *then* be conferred upon any municipality.

Many municipalities have been authorized by statute to issue bonds without an approving vote of the electorate. The authority given in this case is not unusual.

This being so, the electors of the municipality had no fundamental or other right to vote on the issue of municipal bonds.

If, within the statutory maximum, the amount of municipal bonds that are proposed to be issued unduly burden the taxpayers of the city, such excessive bond issues may be appropriately challenged, before issued, in due course of judicial procedure uupon the principles announced in Getzen v. Sumter County, 89 Fla. 45, 103 So. 104; Paul Bros. v. Long Branch, etc., 83 Fla. 706, 92 So. 687.

56

· Affirmed.

TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.

ELLIS, C. J., dissents.

## ON PETITION FOR REHEARING.

PER CURIAM.—The title of Chapter 11516, Acts of 1925, expresses the subject of the Act to be to abolish the present municipal government of the City of Hialeah and to abolish the municipal government of the Town of Hialeah "and to create, establish and organize a municipality to be known and designated as the City of Hialeah, and to define its territorial boundaries, and· to provide for its government, jurisdiction, powers, franchises and privileges, and to authorize the issuance of municipal bonds and for other purposes."

When the above statute was enacted, the Constitution of Florida contained the following provisions:

"The Legislature shall establish a uniform system of county and municipal government, which shall be applicable, except in cases where local· or special laws are provided by the Legislature that may be inconsistent therewith." Sec. 24, Art. III.

"The Legislature shall have power to establish, and to abolish, municipalities, to provide for their government, to ·prescribe their jurisdiction and· powers, and to alter or amend the same at any time." Sec. 8, Art. VIII.

"Each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title." Sec. 16, Art. III.

"A wide latitude must of necessity be accorded the Legislature in its enactments of law; and it must be ·a plain case of violating the requirements of the organic law as to

titles of Acts before the courts will nullify statutes or portions thereof as not being within the purpose and scope of the subject as expressed in the title and of 'matter properly connected therewith.'" Rushton v. State, 75 Fla. 422, 78 So. 345 (H. N. 1).

"If the language of the title considered with reference to the legislative intent as shown by the purpose and object of the Act, may by any fair intendment cover the subject of the Act, the courts will not because of an asserted defective title refuse to give effect to any matter contained in the body of the enactment that is germane to or properly connected with the subject of the law, where the title is not so worded as to mislead an ordinary mind as to the real purpose and scope of the particular enactment." State, ex rel., v. Vestel, 81 Fla. 625, 88 So. 477 (H. N. 5).

"If the title of an Act fairly gives notice of the subject of the Act, so as reasonably to lead to an inquiry into the body thereof, it is all that is necessary." State, ex rel., v. Vestel, 81 Fla. 625, 88 So. 477 (H. N. 7):

"If the title of an Act expresses its subject with sufficient certainty to give reasonable notice of the purposes dealt with by such Act and of its scope, and reasonably leads to inquiry as to its contents, it is sufficient. The title need not be an index to the Act." Lainhart v. Catts, 73 Fla. 735, 75 So. 47 (N. H. 13).

"If the title to the Act fairly gives notice of the subject of the Act so as to reasonably lead to an inquiry into the body of the bill, it is all that is necessary. The title need not be an index to the contents of the bill or act." Ex Parte Pricha, 70 Fla. 265, 70 So. 406 (H. N. 3).

See also State v. Quigg, 94 Fla. 1056, 114 So. 859; Hiers v. Mitchell, 95 Fla. 345, 116 So. 81; Whitney v. Hillsborough County, 99 Fla. 628, 127 So. 486.

"When a matter is so closely connected with the subject of the Act as to create a doubt whether it is not included within it, the courts will not consider the question whether the legislative action upon it violates the constitutional prohibition relating to the titles of laws." County Comm'rs v. Duval County, 36 Fla. 196, 18 So. 339.

See Butler v. Perry, 67 Fla. 405, 66 So. 150.

The powers expressly conferred upon the Legislature by Section 8, Article VIII, of the Constitution, constitute one broad general subject of legislative enactment; and the subject expressed in the title to Chapter 11516, Acts of 1925, embraces no more than the one comprehensive subject stated in the organic section, as it relates to a municipality at one place. The subject of the Act being expressed in the title of the Act, matters properly connected with such subject may by the terms of the Constitution be included in the Act; but only the "subject shall be briefly expressed in the title."

The comprehensive subject of legislative authority with reference to a municipality which is granted in the organic section covers the subject stated in the title of the Act, which subject included any power that may be granted to a municipality under the Constitution. Express legislative authority to establish and to abolish a municipality, to provide for its government, to prescribe its jurisdiction and powers, and to alter or amend the same at any time, includes the power to authorize the issuance of municipal bonds, and the means and method by which such bonds may be issued, is matter properly connected with the subject of authority to issue bonds.

By making the subordinate matter, "and to authorize the issuance of bonds," a part of the subject expressed in the title of the Act, does not make it necessary to state in the

title the means or method for the issuance of bonds, as whether the bonds shall be issued upon an approving vote of the proper electorate or by resolution of the city council or otherwise. The means and method to be used in issuing authorized bonds are matters properly connected with the issuance of bonds that are duly authorized; and the Constitution expressly authorizes such matters to be included in the body of the Act; but does not require matters properly connected with the stated subject to be also expressed in the title of the Act.

The fact that prior to the enactment of Chapter 11516. the municipality could issue bonds only upon an authorized vote of the prescribed electorate, did not make it necessary to express in the title a purpose to change the method of issuing bonds. So the title of the Act is not misleading. The Constitution expressly authorized the Legislature to alter or amend the charter powers of the municipality at any time; and the express reference in the title as a part of the legislative subject to authority to issue municipal bonds, gave ample notice that the power to issue bonds was designed to be given, and interested parties could examine the Act to ascertain the means by which authorized bonds would be issued, which matter could be included in the Act, but, being matter properly connected with authority to issue bonds, need not be expressed in the title.

The public is also held to notice of the provision of Section 24, Article III of the Constitution quoted above, which makes local laws affecting municipalities prevail over inconsistent general laws on the same subject.

Even if a general law required municipal bonds to be issued only upon an approving vote of a prescribed electorate, the Constitution in Section 8, Article VIII, expressly authorized the Legislature to prescribe the jurisdiction and

powers of a municipality and to alter or amend the same at any time. Such a special law providing a different means of issuing municipal bonds by a city would prevail over an inconsistent general law on that subject. And when the grant of authority to issue municipal bonds is expressed in the title of an Act, the Constitution expressly authorized matters properly connected with the subject of issuing bonds to be included in the body of the Act, without expressing such properly connected matters in the title of the Act. The law did not authorize the public to assume that no change would be made in the method of issuing bonds.

The title to Chapter 11516 is sufficient to cover Section 46 of the Act copied in the main opinion, and such title is not misleading as to such section. Therefore Section 16, Article III of the Constitution was not violated by incorporating Section 46 in the Act.

Questions of policy or of burdens imposed in enacting laws, when no provision or principle of the Constitution is thereby violated, are not subject to judicial review.

Rehearing denied.

TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.

ELLIS, C. J., dissents.