668 So.2d 1096 (1996)
DEPARTMENT OF COMMUNITY AFFAIRS, Appellant,
v.
HOLMES COUNTY, Washington County, and Gulf County, Appellees.
No. 95-2224.
District Court of Appeal of Florida, First District.
March 5, 1996.
*1097 Alfred O. Bragg, III, Robert C. Byerts, and David L. Jordan, Tallahassee, for Appellant.
Thomas Gerald Holley, Chipley, and Barbara S. Sanders, Apalachicola, for Appellees.
Alan C. Sundberg, W. Douglas Hall, and Michael P. Donaldson of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, for Amicus Curiae, the City of Tallahassee, Leon County, and Wakulla County.
ZEHMER, Chief Judge.
This action, filed by Holmes County and Washington County in the Circuit Court of the Fourteenth Circuit in Holmes County, seeks to enjoin the Florida Department of Community Affairs (DCA) from allocating and distributing certain federal disaster assistance funds to Leon County, Wakulla County, and the City of Tallahassee without first affording the Plaintiff Counties an opportunity to compete for a portion of such funds. On the Plaintiff Counties' motion pursuant to rule 1.610, Florida Rules of Civil Procedure, the trial court entered a temporary injunction without notice and hearing, and DCA moved to dissolve the temporary injunction or, alternatively, to require the Plaintiff Counties to post a bond.[1] DCA also moved to transfer this action to the Second Circuit in Leon County based on DCA's venue privilege to defend this action in the county wherein its headquarters are located. After an evidentiary hearing, the trial court *1098 entered an order denying both motions, and DCA brings this appeal to review that order.[2] We hold that the trial court erred in granting the temporary injunction because the Plaintiff Counties did not establish a legal right to participate in the allocation and distribution of the subject federal disaster assistance funds. We also hold that the trial court erred in applying the "sword-wielder" exception to deny transfer of venue to the circuit court in Leon County. Accordingly, we reverse the appealed order, vacate the order granting the temporary injunction, and remand with directions.

I.
On May 19, 1995, the Plaintiff Counties filed their complaint for a permanent injunction against DCA, and that same day the trial court entered the temporary injunction under review. On May 25, DCA served its motion to transfer venue and motion to dissolve the temporary injunction. On May 30, the day before the hearing on DCA's motions, the Plaintiff Counties filed a First Amended Complaint. As the amended complaint substantially tracks the language of the initial complaint but with additional allegations that DCA's action deprives the Plaintiff Counties of their right to due process of law under the federal and state constitutions, in this discussion we shall refer to the allegations in the amended complaint.
The Plaintiff Counties allege that they are suing as a political subdivision of the state[3] to enjoin DCA from allocating and distributing the subject federal disaster assistance funds. DCA is the state agency responsible for the distribution and administration of such funds at the state level. The Plaintiff Counties allege that Congress appropriated approximately $42,900,000 in Community Development Block Grant funds for flood relief related to Tropical Storm Alberto; that the Plaintiff Counties lie in the declared disaster area for Northwest Florida; that, in January 1995, $22,200,000 of those flood relief funds was released to DCA and divided among Franklin County and the cities of Caryville, Chattahoochee, Bonifay, and Blountstown; and that the remaining $20,700,000 of those funds was intended for flood relief in the other areas affected by Tropical Storm Alberto that lie within the declared disaster area, of which the Plaintiff Counties are a part. The complaint then alleges that:
7. Prior to the release of the remaining $20,700,000.00 to DCA, an intense political power struggle arose to divert these monies outside the declared disaster area, to the City of Tallahassee, Leon County and Wakulla County. As a result of this political action, and as a direct result of an amendment to the Congressional Funding Legislation introduced by Congressman Pete Peterson, the funds were diverted from the declared disaster area, and earmarked for the City of Tallahassee, Leon County and Wakulla County.
The complaint further alleges that Plaintiff Counties, being within the declared disaster areas, have within their unincorporated areas a large amount of eligible flood damage for which they have not received any disaster funding; that the City of Tallahassee, Leon County, and Wakulla County were not within the disaster area declared for Tropical Storm Alberto; that an amendment to the congressional funding legislation adding the words "and other disasters" to the appropriation legislation "was introduced and passed as an integral part of the political power struggle initiated to divert the funds outside the declared disaster area"; that the "decision to divert the funds at the Congressional level from the declared disaster area was strictly a political decision, based on votes and not on need based criteria"; that the $20,700,000 has been released to DCA; and that, although "DCA has the authority to amend its Community Development Block Grant final statement, and redistribute the funds based on need criteria, and not on politics," it has insisted that Plaintiff Counties negotiate with *1099 Tallahassee and Leon County to share a portion of these funds, which the counties were doing. The complaint then alleges:
14. Although it is acknowledged that discretion is, and should be involved in the allocation of CDBG [Community Development Block Grant] funds, the diverting of the funds in question by Congress, and the refusal to redistribute the funds by DCA, are both clear abuses of discretion. Both decisions were made solely on political consideration, and not based on any reasonable need criteria.
15. DCA's refusal to reallocate and redistribute the funds violates the constitutional right of due process of law, afforded the Plaintiff counties by both the federal and state constitutions. These funds should have been allocated on the basis of where the most severe damage and need was located, and the arbitrary refusal and failure of DCA to reallocate the funds based on severity of damage and need violates and infringes upon the Plaintiff counties' constitutional right of due process of law. [The allegations in this paragraph were added in the amended complaint.]
16. CDBG funds allocated to the neighborhood revitalization category are set aside for use in any local government jurisdiction for which an emergency or natural disaster has been declared. Applications are accepted only from applicants who have been declared to be in a state of emergency by executive order. The amendment of the Congressional Funding Legislation to include "other disasters" circumvents the customary allocation policy, and further demonstrates the political nature of the decision.
17. If DCA is allowed to contract the funds in question with the City of Tallahassee, Leon County and Wakulla County, both of the Plaintiff Counties will suffer irreparable harm in that hundreds of residents within their respective jurisdiction will receive no funding to relocate or rebuild. A decreasing tax base will result, and the Plaintiff Counties will incur tremendous expenses in providing relief for these residents. Both Counties will also face the prospect of dealing with similar disasters in the future, because of the inability of the affected residents to relocate.
18. Plaintiff Counties are in need of an immediate temporary injunction without notice, or with limited notice, because of the shortness of the time required to finalize the execution of contracts. Any notice to Defendant [DCA] would trigger a desperate attempt to finalize the contracts. Plaintiffs have no other adequate remedy in law or equity. The attempted negotiations broke down late in the day of Thursday, May 18, 1995, and the decision to file suit was finalized during the night of May 18, 1995.
The amended complaint concluded with a prayer for entry of a temporary injunction and a permanent injunction
unless and until Defendant, DCA, amends its allocation of said funds based on demonstrated severity of damage and need criteria; makes its reallocation based upon elements of fairness, and applies due process of law to the Plaintiff Counties in its reallocation process; and distributes an equitable portion of said funds within the declared disaster areas of the Plaintiff Counties.
In the order granting a temporary injunction, the trial court found that:
the Plaintiff Counties will suffer immediate irreparable injury unless a temporary injunction is issued at this time; the injury likely to be suffered is that numerous residents living within the declared disaster area will be without funding help to relocate or upgrade, thereby imposing additional financial burdens on the Plaintiff Counties to help and protect them, both now and in the future; and that a temporary injunction should be issued without notice or with limited notice provided, due to the immediate nature of the irreparable injury, and due to the very real possibility that further and better notice would render the injunctive relief unavailable due to the funds being encumbered.
The court then ordered that:
A temporary injunction is hereby issued, enjoining the Defendant, State of Florida Department of Community Affairs, from contracting or distributing or otherwise *1100 encumbering the $20,900,000.00 [sic] in flood relief disaster funds, with any governmental unit or body or other applicant, until further order of this court.
No reference was made to any factual basis or any statutory or other legal authority that would require the court to order that the Plaintiff Counties be permitted to compete for a share in the $20,700,000 disaster funds here involved.
At the hearing on DCA's motions to dissolve the injunction and transfer venue, the Plaintiff Counties undertook to present evidence to substantiate the allegations in their complaint. This evidence focused mainly on proving the extensive flood damage from Tropical Storm Alberto remaining to be remedied in the Plaintiff Counties. DCA presented evidence in support of its contention that the federal funds distributed to the State of Florida had been duly appropriated in accordance with federal and state law, and had been allocated in compliance with the federal appropriation and federal law. The proof established the congressional appropriation of $180,000,000 to aid states, local governments, and businesses in recovering from flooding and other damage caused by Tropical Storm Alberto and other natural disasters (Pub.L. No. 103-327). Of that appropriation, $42,900,000 was allocated by the United States Department of Housing and Urban Development (HUD), as authorized by Congress, to the State of Florida pursuant to 42 U.S.C. § 5121 et. seq. The Plaintiff Counties are within the disaster area declared by President Clinton following Tropical Storm Alberto. The City of Tallahassee, Leon County, and Wakulla County are not within that disaster area, but are included in disaster areas resulting from Tropical Storm Beryl and Tropical Depressions No. 8 and No. 10 declared in Executive Orders issued by the Governor and by the Small Business Administration.
HUD allocated the funds to the State of Florida in two separate awards. The first occurred on January 6, 1995, when HUD allocated $22,200,000 to DCA to be allocated to five local communities in Holmes and Washington Counties. The second occurred on April 5, 1995, when HUD allocated the remaining $20,700,000 to Florida with the monies, according to that agency, "expected to be used for projects in the City of Tallahassee and Leon County and ... in Wakulla County." Specifically, HUD allocated $12,600,000 to the City of Tallahassee to be used for flood relief programs including a voluntary home acquisition program that purchases homes in flood prone areas; $6,100,000 to Leon county also to be used for flood relief programs including the acquisition of homes in flood prone areas, as well as other flood related programs such as road relocation, elevation, and flood proofing; and $2,000,000 to Wakulla County to be used primarily to extend vital water and sewer lines into flood prone areas. Specific projects had been selected from data compiled by the Community Redevelopment Task Force and provided to HUD by DCA. After receipt of the federal funds, on May 11, 1995, DCA requested an appropriation authorization, in the form of a budget amendment, to distribute these funds to the City of Tallahassee, Leon County, and Wakulla County. The requested authorization was approved and the $20,700,000 was legislatively appropriated by amendment to the budget in accordance with chapter 216, Florida Statutes. DCA then initiated the process for disbursing these funds in accordance with the appropriation. At that point in time, the Plaintiff Counties obtained the temporary injunction against DCA.
In the order denying DCA's motions to change venue and to dissolve the temporary injunction, the trial court made the following rulings, based on "the argument of counsel, the memoranda filed and the exhibits tendered into evidence" at the hearing held June 3, 1995:
Based on the above, the Court finds that the "sword-wielder" exception to the Defendant's right to venue in Leon County is appropriate in this case. The allegations of the initial Complaint are sufficient to allege that the Defendant is taking an action that would, if completed, deprive the Plaintiff of significant property rights. The Complaint further alleges that the Defendant has failed to follow Statutorily mandated guidelines.

*1101 On the second issue, the Complaint sets out facts which, if true, would constitute irreparable harm to Plaintiffs. The initial Complaint alleges actions taken without authority which, if true, would constitute immediate disbursement or encumbrance of the funds held by the Defendant.
Finally, the Defendant raises the issue that the Court failed to require the Plaintiffs to post bond. The Court finds that bond is not necessary in this case since the Defendant is not a stake holder in this proceeding, but only a conduit for the funds.
Appealing this order, DCA argues error in each of the three rulings.

II.
At the hearing on the motion to dissolve the temporary injunction, the Plaintiff Counties, having obtained the preliminary injunction without a hearing, had the burden of going forward with the evidence to establish a prima facie case to support the injunctive relief. Shea v. Central Diagnostic Services, Inc., 552 So.2d 344 (Fla. 5th DCA 1989); DeLisi v. Smith, 401 So.2d 925 (Fla. 2d DCA 1981). The Plaintiff Counties, however, failed to demonstrate any legal or factual basis for enjoining DCA from distributing the federally appropriated funds to Tallahassee, Leon County, and Wakulla County in accordance with the federal and state appropriations. They did not identify any legal or factual irregularity in the legislative appropriation and allocation of the funds by DCA that would warrant judicial intervention in that process by the exercise of the court's injunctive power.
Concisely stated, the Plaintiff Counties now argue that DCA has not complied with the procedural requirements of sections 290.0401-290.049, Florida Statutes (1995), the Florida Small Cities Community Development Block Grant Act, and rule 9B-43, Florida Administrative Code, implementing that act, because DCA did not afford the Plaintiff Counties an opportunity to vie for such funds in a competitive selection process.[4] The Plaintiff Counties contend that DCA's attempted allocation of the funds to the City of Tallahassee, Leon County, and Wakulla County without complying with the cited act and regulations has deprived them of the constitutionally guaranteed due process of law under the federal and state constitutions. There are two fatal deficiencies in these arguments.
First, the Florida Small Cities Community Development Block Grant Program Act in chapter 290 does not apply to the disputed funds allocated by DCA in this instance, and these funds are not subject to the competitive selection process provided for therein. To be subject to those provisions, the revenue must be specifically designated for that fund; but these funds were not so designated. Rather, these emergency disaster assistance funds were specifically appropriated by the federal government for use in the City of Tallahassee, Leon County, and Wakulla County as a result of political process and decision-making by the Congress and the federal agency. This point is well established in the Plaintiff Counties' verified complaint by the repeated allegations that the amendment to the federal appropriation to include "other disasters" that would include the City of Tallahassee, Leon County, and Wakulla County was the result of a political decision by the legislative representatives in the Congress. "Questions of policy or of burdens in enacting laws, when no provision or principle of the constitution is thereby violated, are not subject to judicial review." City of Hialeah v. State ex rel. Ben Hur Life Ass'n, 128 Fla. 46, 174 So. 843, 849 (Fla.1937). The courts of this state have no business enjoining the political decisions of the Congress or the state legislature unless a violation of a state or federal constitutional provision or principle is shown to have occurred. See Jackson Lumber Co. v. Walton County, 95 Fla. 632, 116 So. 771 (Fla.), appeal dismissed, 296 U.S. 667, 49 S.Ct. 338, 73 L.Ed. 1011 (1928). No such showing has been alleged or made by the Plaintiff Counties in this case.
*1102 Second, the Plaintiff Counties do not argue that the appropriations, either federal or state, are themselves unconstitutional. Rather, the counties argue that the procedure employed in DCA's allocation of funds has violated their asserted constitutional right to due process under the federal and state constitutions. However, the procedural requirements relied on by the Plaintiff Counties are not applicable to these funds. Moreover, the Fourteenth Amendment to the federal constitution and article I, section 9, of the Florida Constitution provide that no "person" shall be deprived of life, liberty, or property without due process of law. Being political subdivisions of the State of Florida, the Plaintiff Counties are not a "person" entitled to protection under the due process clause of the federal or state constitution. See City of Trenton v. State of New Jersey, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923); Shelby v. City of Pensacola, 112 Fla. 584, 151 So. 53 (Fla.1933); Riley v. Stack, 128 Cal.App. 480, 18 P.2d 110 (1932).
To justify the issuance of a temporary injunction, the moving party must establish, among other things, a substantial likelihood of success on the merits of the case. City of Jacksonville v. Naegele Outdoor Advertising Co., 634 So.2d 750 (Fla. 1st DCA), approved, Naegele Outdoor Advertising Co. v. City of Jacksonville, 659 So.2d 1046 (Fla.1994). The Plaintiff Counties have failed to show any likelihood of success on the merits of their injunctive action against DCA. The circuit court's order granting the temporary injunction did not make any reference to this essential criterion.
We are not unmindful that the Plaintiff Counties made a showing of substantial need for federal or state assistance to address the unremedied damage from Tropical Storm Alberto. But those issues are political decisions for the legislative and executive branches of government, not the courts. Therefore, we are constrained to hold that the circuit court erred in denying the motion to dissolve the temporary injunction.

III.
Addressing the venue issue, we hold that the circuit court erred in denying DCA's motion to transfer venue to the circuit court in Leon County, where DCA's headquarters are located. Venue in a civil action brought against a state agency properly lies in the county of the agency's principal headquarters. Florida Public Service Comm'n v. Triple "A" Enterprises, Inc., 387 So.2d 940 (Fla.1980); Carlile v. Game and Fresh Water Fish Comm'n, 354 So.2d 362 (Fla.1977); Smith v. Williams, 160 Fla. 580, 35 So.2d 844 (Fla.1948). In the absence of waiver, the venue privilege is an absolute right. Navarro v. Barnett Bank of West Florida, 543 So.2d 304 (Fla. 1st DCA 1989). The so-called "sword-wielder" doctrine is an exception to this venue privilege, but it applies only where a state agency directly threatens an individual's constitutional rights. In that limited circumstance, an individual may bring suit in the county where the alleged wrong occurs. Florida Public Service Comm'n v. Triple "A" Enterprises, Inc., 387 So.2d at 942; Nyberg v. Snover, 604 So.2d 894 (Fla. 1st DCA 1992). The "sword-wielder" exception does not apply in suits seeking injunctive relief against political funding decisions. Chiles v. Children A B C D E and F, 589 So.2d 260, 263 n. 4 (Fla.1991). The Plaintiff Counties are not "individuals" within the meaning of that exception whose constitutional rights have been directly threatened by the state agency.
Having concluded that the motions to dissolve the temporary injunction and to transfer venue should have been granted, we find it unnecessary to address the bond issue.
The order under review is reversed, the temporary injunction is vacated, and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
BARFIELD and KAHN, JJ., concur.
NOTES
[1] A notice setting a hearing on the Plaintiff Counties' application for temporary injunction at 8:30 a.m. on May 19 in the Holmes County Courthouse was faxed to DCA in Tallahassee at 7:30 a.m. that same morning. In view of such short notice, we treat the injunction as one obtained without notice. Since DCA moved to vacate the injunction, lack of adequate notice is not an issue on appeal. State v. Beeler, 530 So.2d 932 (Fla. 1988).
[2] At the hearing, the circuit court allowed Gulf County to intervene in support of the Plaintiff Counties.
[3] At oral argument, counsel for the Plaintiff Counties asserted that they also are suing as representatives of the citizens and taxpayers of the respective counties; but, without regard to whether the counties are legally authorized to sue in this representative capacity, the assertion is not supported by the record in this case.
[4] The Plaintiff Counties also contend that DCA did not comply with the notice and public hearing requirements in 24 C.F.R. § 570.485 (1994). That section is not applicable to the funds involved in this matter.