802 So.2d 1190 (2002)
JACKSONVILLE ELECTRIC AUTHORITY, Appellant,
v.
CLAY COUNTY UTILITY AUTHORITY, a local governmental body, corporate and politic, and AFI Associates, Inc., a Florida corporation, Appellees.
No. 1D01-530.
District Court of Appeal of Florida, First District.
January 4, 2002.
*1191 Kenneth A. Hoffman and J. Stephen Menton of Rutledge, Ecenia, Purnell & Hoffman, P.A.; John K. Aurell, John R. Beranek, and Martin B. Sipple of Ausley & McMullen, Tallahassee; Richard A. Mullaney, General Counsel, Anthony B. Zebouni, Assistant General Counsel, and Michael B. Wedner, Assistant General Counsel, Office of General Counsel, Jacksonville, for Appellant.
Martin S. Friedman and Daren L. Shippy of Rose, Sundstrom & Bentley LLP, Tallahassee; Grady H. Williams, Jr., Orange Park, for Appellees.
WOLF, J.
This is a timely appeal of a non-final order denying appellant's motion to dismiss due to improper venue. The only issue before the court is whether the trial court improperly denied appellant's home venue privilege. We are bound by prior decisions of the supreme court in our application of the home venue privilege; therefore, we reverse the decision of the trial court, but we certify a question of great public importance to the supreme court.
The Jacksonville Electric Authority (JEA) is a governmental body with its principal place of business in Duval County, Florida. Clay County Utility Authority (CCUA) is a local governmental body with its principal place of business in Clay County, Florida. Both utilities claim the right to provide water and wastewater service to the Clay County portion of a development, The Villages of Argyle (Argyle).
In 1986, the City of Jacksonville acquired from Du-Lay Utility Company, Inc. (Du-Lay) the right to serve all of the territory owned by Du-Lay, which included the Argyle area in both Clay County and Duval County. In 1998, the Public Service Commission cancelled all of the water and sewer certificates owned by Du-Lay, including certificates relevant to the Argyle area. In 1994, the Florida Legislature by Special Act 94-491, created CCUA *1192 as an independent special authority to provide water and sewer services within Clay County. The City of Jacksonville transferred all of its wastewater assets and responsibilities to JEA in 1997. Three years later, JEA entered into a Utility Service Agreement with the developer of the property, AFI, regarding the specific terms of service of the Argyle area for both Duval and Clay Counties.
In December 2000, CCUA filed suit against both JEA and AFI in Clay County, alleging that the Utility Service Agreement "is in contravention of Special Act 94-491, Special Act 67-1569, Chapter 164 of the Florida Statutes and other applicable laws, including the Florida Constitution." CCUA sought declaratory and injunctive relief against JEA and AFI. JEA and AFI timely filed motions challenging the venue and requesting that the case be dismissed or transferred to Duval County based on JEA's home venue privilege.
On January 26, 2001, the judge held a motion hearing at which he considered affidavits submitted by both parties, the opposition of the change of venue, and oral arguments from both parties. Four days later, the judge denied the motion for a change of venue, noting that his decision was based on the allegation in the complaint that "the Defendants' agreement is in contravention of ... the Florida Constitution."
Governmental defendants in Florida have a common law "home venue privilege" to be sued in the county where they maintain their principal headquarters. See Fla. Pub. Serv. Comm'n v. Triple "A" Enter., Inc., 387 So.2d 940, 942 (Fla.1980). Absent waiver or application of an identified exception, the home venue privilege appears to be an absolute right. See, e.g., Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362, 366 (Fla.1977); Triple "A", 387 So.2d at 942; Dep't of Cmty. Aff. v. Holmes County, 668 So.2d 1096, 1102 (Fla. 1st DCA 1996)(citing Navarro v. Barnett Bank of West Florida, 543 So.2d 304 (Fla. 1st DCA 1989)). Florida courts have allowed only three exceptions to the home venue privilege. One exception allowed is waiver by statute, which is not applicable in the instant case. Another exception gives the trial court discretion to dispense with the home venue privilege when a governmental body is sued as a joint tortfeasor. See Bd. of County Comm'rs of Madison County v. Grice, 438 So.2d 392, 395 (Fla.1983). In the instant case, no tort is alleged; thus, this exception is inapplicable. A third exception to the home venue privilege is known as the "sword-wielder" doctrine. See Barr v. Fla. Bd. of Regents, 644 So.2d 333, 335 (Fla. 1st DCA 1994). Based on the language in the trial court's order, it apparently relied on the sword-wielder doctrine in denying JEA's motion, although it never used the term "sword-wielder."
The sword-wielder exception applies when the plaintiff's constitutional rights are in "real and imminent danger" of invasion by a state agency. See id. The test in such cases is
whether the state is the initial sword-wielder in the matter and whether the plaintiff's action is in the nature of a shield against the state's thrust. If so, then the suit may be maintained in the county wherein the blow has been or is imminently about to be laid on.
See Triple "A", 387 So.2d at 942. To apply the sword-wielder doctrine, the court must first determine that there is a constitutional invasion of the plaintiff's rights which *1193 has occurred or which is about to occur in the county where the suit is filed. See Carlile, 354 So.2d at 365. Secondly, the court must determine that the invasion is both real and imminent. See id.
The type of constitutional invasions which have supported the application of the sword-wielder doctrine have been asserted by a private party and have been fundamental in nature. For example, in Barr v. Fla. Bd. of Regents, 644 So.2d 333 (Fla. 1st DCA 1994), there was an alleged violation of the appellant's First Amendment Rights, and in Graham v. Vann, 394 So.2d 178 (Fla. 1st DCA 1981), there were allegations that prisoners were being deprived of basic constitutional rights. At best the allegation in the instant case involved a technical violation of the constitution: that JEA, a local governmental entity, was acting inconsistently with state statute. Thus, no basic or fundamental constitutional deprivation was alleged which would support application of the sword-wielder doctrine.[1]
The Florida Supreme Court clearly set forth the policy reasons for allowing the home venue privilege in Smith v. Williams, 160 Fla. 580, 35 So.2d 844 (1948), stating,
[I]n order to promote orderly, efficient, and economical government, controversies involving the proper interpretation to be given rules and regulations promulgated by state agencies ought to be concentrated at the seat of state government where such state agencies are located, where such rules and regulations are promulgated, and where such suits can be defended at a minimum expenditure of effort and public funds. Such concentration of litigation manifestly makes for uniformity of interpretation of rules and regulations promulgated by such state instrumentalities and prevents conflicting judicial rulings in different jurisdictions resulting in decrees binding only in the counties where rendered and serving only to protect parties to the suits from the operation only of unlawful acts shown to have been actually committed within such particular jurisdictions.
Id. at 847; see also, Carlile, 354 So.2d at 364; Grice, 438 So.2d at 394.
Our decision in the current case is supported by none of the policy reasons discussed in Smith v. Williams. Both parties here are governmental entities seeking to provide services in an area located in or adjacent to both counties. No efficient or economic policy is served by our decision to transfer venue from Clay County to the neighboring Duval County (two counties within the same judicial circuit). In fact, it would be more appropriate for a court sitting in Clay County to determine which entity could best provide service to residents of Clay County. However, we are still required to apply the home venue privilege because no exception exists which would allow us to decline to apply the privilege.
The supreme court, however, has allowed trial courts discretion to dispense *1194 with the home venue privilege in limited circumstances such as with the joint tortfeasor exception. See Bd. of County Comm'rs of Madison County v. Grice, 438 So.2d 392, 395 (Fla.1983). In allowing this exception, the court stated: "The exercise of this discretion must be guided by considerations of justice, fairness, and convenience under the circumstances of the case." Id. We feel that similar discretion would be appropriate in this case, but we are constrained by prior case law to apply the home venue privilege and reverse the trial court's order. However, because this issue is one of great public importance, we certify the following question to the Florida Supreme Court:
MAY A TRIAL COURT EXERCISE ITS DISCRETION AND DECLINE TO APPLY THE HOME VENUE PRIVILEGE WHERE NONE OF THE POLICY REASONS BEHIND THE APPLICATION OF THE PRIVILEGE EXIST?
KAHN and BENTON, JJ., concur.
NOTES
[1] Since no fundamental constitutional violation exists, it is unnecessary for us to determine whether the violation was imminent. However, we note that Fla. Pub. Serv. Comm'n v. Triple "A" Enter., Inc., 387 So.2d 940 (Fla.1980), is not controlling in the current case. In Triple "A", the supreme court found that no imminence existed because a letter sent by the government to the plaintiffs was only a threat, and no further action had been taken. See id. at 942. We believe that JEA's entry into a contract to provide service to the Argyle area indicates a more imminent action than did the government letter in Triple "A".